Mann v. National Bank.

LAWSON MANN, *et al.*, v. THE SECOND NATIONAL BANK OF SPRINGFIELD, OHIO.

1. NEGOTIABLE NOTE—*Discount—Failure of Consideration—Notice.* The Champion machine company, the payee and holder of a promissory note, indorsed it to the plaintiff bank before maturity. The company at the time of such indorsement, knew that the consideration had failed· The indorsement was made by A, its president and actual business manager. A was also a director of the plaintiff bank, and one of the three constituting its discount committee. The note was discounted by the bank by its cashier, under general instructions from its president, (and probably other members of the discount committee, including A,) to discount all paper offered by the Champion machine company. The discount committee, as such, never took action upon this note, but it was discounted by the bank through its cashier, under the general instructions above stated. As president and general manager of the machine company, A was chargeable with notice of the infirmity in the note. If the discount committee had met and acted upon this note, the bank would have been chargeable with the notice which he, as member of the discount committee, had. *Query:* Can an officer of a bank, charged with a special duty, by a general instruction to some other officer, practically abandon the discharge of his duty, and thus, through the ignorance of such other officer, enable the bank to discount and obtain possession of paper as a *bona fide* holder, when if he had discharged his duty, it would have taken the paper with notice?

2. BANK, *Not Protected Against Infirmity of Note.* The mere discounting of paper, and placing the amount thereof to the credit of a depositor who already has a large balance to his credit, does not make the bank a purchaser for value so as to protect it against infirmities in the paper. Entering the amount of the discount to the credit of the depositor simply creates the relation, between the bank and the depositor, of debtor and creditor; and as long as that relation remains, and the deposit is not drawn out, the bank has simply promised to pay the depositor, has parted with no value, and is not entitled to the protection of a *bona fide* holder of paper.

*Error from Doniphan District Court.*

ACTION by the *Second National Bank* of Springfield, Ohio, against *Mann* and another, on a negotiable promissory note. Trial at the September Term, 1882, of the district court, and verdict for plaintiff for $153. New trial denied, and judgment accordingly. The defendants, alleging error, have brought this judgment here. The opinion states the case.

*Thos. W. Heatley,* and *W. D. Webb,* for plaintiffs in error:

The payee of the note was president of the machine company, a director in the bank, and a member of its "discounting committee." As such payee he was bound to know that the consideration had failed. It was for the jury to say what effect should be given to the evidence. (19 Kas. 60.) As a general rule, what the directors of a corporation know regarding matters affecting its interests, the corporation will be held to know, and knowledge on the part of directors may be *inferred from circumstances,* and it is not always necessary to show it by direct evidence. (30 Conn. 380.) As Whitely was a member of the "discounting committee," this case comes within the opinion of the court in *Farmers' and Citizens' Bank v. Payne,* 45 Conn. 451. He was appointed to act especially in the capacity of discounting notes for the bank, and when he procured one to be discounted, the knowledge that he possessed in regard to it was the knowledge of the bank. If it be said that he did not act with the majority, and consequently without authority, we reply that the bank has approved of his act, and is now availing itself of it. Besides, the cashier knew this note had not taken the usual course of other discounts; it had not passed the committee, but had taken an unusual course. The president had no authority to direct the cashier to discount a given note. There was a committee for that purpose. (3 Hill. 262; 1 id. 578; 1 Pars. on Contr. 66; 26 Conn. 382; 37 id. 257.)

Although there has been a great conflict of opinion in the courts, as to whether a party who receives an indorsed negotiable note before maturity, in payment of an antecedent debt, or as security for an antecedent debt, is a *bona fide* holder, and takes it discharged of equities in favor of the maker, (29 Conn. 475, and cases cited,) yet we understand that the case of *Draper v. Cowles,* 27 Kas. 484, has settled the law on that subject in this state.

If the company has not yet received the money, it should not take it. To permit it to do so, after the consideration of

Mann v. National Bank.

the note has failed, would be the greatest injustice. (*Dougherty Bros. & Co. v. Cent. National Bank*, 93 Pa. St. 227, 233.)

If it be said that the bank gave credit on its books, then we say the credit was given to the indorser by the indorsee. If the bank assumed responsibilities when it received the note, it assumed them to the transferer, and they are not negotiable. The new responsibility must be negotiable, or to some other person than the indorser of the note. The indorsement must be to pay a new debt, or to pay an old debt, or for a new purchase, or to secure a new purchase, or to secure an old debt. In this case it was to increase the indebtedness of the indorsee to the indorser.

The conflict on the question as to whether or not a negotiable promissory note, indorsed before due, without notice, in payment of a preëxisting debt, or as security for a preëxisting debt, or as security for future advances, passes discharged of equities, has been long and severe. There are a great many cases on both sides of the question. The majority, however, are on the side of the affirmative. (40 Md. 540; *Rld. Co. v. Bank*, 102 U. S. 14; 55 N. Y. 236; 58 id. 77; 65 id. 438; 73 id. 269; 29 Wis. 209.)

When this note was transferred, and also on the day this case was tried, the bank owed the company "several thousand dollars." We agree that if the machine company had *owed the bank*, and the bank had placed the amount of the note to its credit, or had applied it to the discharge *pro tanto* of such indebtedness, the consideration would be sufficient.

*W. D. Webb*, for plaintiff in error, also cited and commented upon the following cases: *Omaha Nat. Bank v. Walker*, 5 Fed. Rep. 399, and cases cited; 21 Kas. 545; *First Nat. Bank of Nashville v. McClurg*, (7 Lea, 492,) 40 Am. Rep. 66; *Comstock v. Hier*, 73 N. Y. 269; *Jordan v. Shoe and Leather Bank*, 74 N. Y. 467; *Dresser v. Mo. & Iowa Rld. Co.*, 93 U. S. 92; *Maitland v. Citizens' Bank of Baltimore*, 40 Md. 571; *Rld. Co. v. Nat. Bank*, 102 U. S. 14; *Nat. Bank v. Bank of Albion*, 52 Barb. 592; *Platt v. Chapin*, 49 How. Pr. 318; *Fulton Bank*

*v. Phœnix Bank*, 1 Hall, 619; *Bank v. Duncome*, 48 Iowa, 488; *Bank v. Hughes*, 17 Wend. 100; *Ætna Nat. Bank v. Fourth Nat. Bank*, 46 N. Y. 82; *Bank of Mobile v. Hall*, 6 Ala. 639, (41 Am. Dec. 72.)

*Ryan & Wood*, for defendant in error:

There is no claim that Whitely had any notice, or that he ever knew anything of the notice to Quigley. The notice to Quigley, as general agent, was constructive notice to the Champion machine company, which would be charged with such notice; but it was not actual notice to Whitely, its president. To charge the bank with notice, would be to say, that the constructive notice to the company was notice to the bank of which Whitely was a director, although he had no actual notice, or any knowledge whatever of the matter. This would be carrying constructive notice very far indeed. This is mere suspicion of notice. While it is held that the fact of notice may be inferred from circumstances, as well as proved by direct evidence, the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides*. "Notice is therefore never to be presumed, but must be proved, and proved clearly. A mere suspicion of notice, even though it be a strong suspicion of notice, will not suffice." (*Vest v. Michie*, 31 Gratt. 149, and cases cited.)

But we contend that even if Whitely had actual notice of the failure of the warranty, while acting as president of the machine company, the bank would not be charged with such notice by reason of his being a director thereof. A notice to a bank director or trustee, or knowledge obtained by him while not engaged, either officially or as an agent or an attorney, in the business of the bank, is inoperative as a notice to the bank. If the notice was actual, the bank would not be charged with his knowledge, unless the fact was in his mind at the time, nor unless he was acting for the bank in that particular transaction. (*Fairfield Savings Bank v. Chase*, 72 Me. 226, and cases cited; *Lake v. Reed*, 29 Iowa, 258; *Louisiana*

*State Bank v. Senecal,* 13 La. 525 ; Story on Agency, p. 175, §140; *Loomis, Campbell & Co. v. Eagle Bank of Rochester,* 1 Disney, 285, and cases cited.)

Was the credit of the proceeds of said note, $142.14, on the books of the bank in favor of the Champion machine company, such a payment as to pass the title of the note to the bank? We claim that the moment the credit was made, the amount so credited was subject to the check or order of the company, just as much as if it had been paid across the counter to Christee, the cashier of the company, and by him returned to the bank as a regular deposit, and credited. The purpose of a discount is, that the customer may draw out at his pleasure the avails of his discount. A bank is a debtor for the discount which is placed to its depositor's credit. If it could retain the money against the note, the discount would be useless to the customer. The bank had no lien on the money on deposit for the payment of this note. There was no contract for a lien in this case, nor did the law operate to give one. (*Jordan v. National Shoe and Leather Bank,* 74 N. Y. 472, 473.) The bank could not legally refuse to pay out the amount of the discount on the presentation of the check of the machine company. (*Fourth Nat. Bank v. City Nat. Bank,* 68 Ill. 400.)

When the note was discounted, the machine company evidently directed the amount placed to its credit; and under such direction, the entry of the credit was as effectual as if the depositor had brought in on that day the check of another customer, and had it entered to its credit. It was a payment. (*First National Bank of Nashville v. McClurg,* 40 Am. Rep. 68.) In the case of the *First National Bank of Parkersburg v. Crawford,* 2 Cincinnati Superior Court Reports, 125, the syllabus is as follows:

"When a draft is discounted by a bank, and passed to the credit of the drawer, and he is allowed to check against it, the bank is a holder for a valuable consideration. In such case, though the drawer's account is overdrawn at the time of the discount, and at the time of the maturity of the draft,

the court will not inquire into the amount checked out, but the consideration once existing will be held good as to the whole note."

That the machine company, as a regular customer of the bank, carried an average balance of several thousand dollars on deposit at the commencement of this action, and had at no time since December 14, 1881, been below $143, cuts no figure. It is customary for every business house to each day deposit the cash receipts in some bank for safe-keeping and convenience, and to pay all or most bills by drawing checks on the banks where such deposits are made. In this way, the account of the depositor is constantly varying in amount: the money deposited one day may be checked out the same or the next day, and the account again replenished by other deposits. It cannot be claimed that the money on credit of the Champion machine company December 14, 1881, when the discount was made, remained on hand for any length of time, as thousands of dollars are daily required to run its mammoth business. Yet it is said that the machine company did not need money at the time this discount was made, simply because it carried "an average balance of several thousand dollars." But there is no evidence to sustain this view.

The opinion of the court was delivered by

BREWER, J.: This was an action on a negotiable promissory note. Trial by jury. The court instructed the jury peremptorily to find for the plaintiff, and of this defendants complain. The note was given in payment of a Champion harvester and cord binder. In the sale of this machine a warranty was given, and the defense was a breach of the warranty, and therefore a failure of the consideration. Upon the trial, testimony was offered in support of this defense, and finally it was admitted that the defendants were entitled to a verdict, unless the plaintiff was a purchaser of the note for a good and valuable consideration before maturity, without notice of the failure of the warranty. The note was in

27— 30 KAS.

form to the order of Amos Whitely, president. It was due January 1, 1882, and was indorsed and transferred to plaintiff, December 14, 1881. The note, though in form to the order of Amos Whitely, was the property of the Champion machine company, was taken by it on the sale of the machine, in the name of its president, for convenience, and by it, through the indorsement of its president, transferred to the plaintiff. The failure of the warranty was communicated to the general agent of the company at St. Joseph, Missouri, before the note became due, and while it was in the possession of the company. It further appears, that the only officer of the bank who took part in the discount and purchase of this note by the plaintiff, was its cashier, John G. Benalack, who had been cashier since August 15, 1881. Up to a month prior to such time, he had been book-keeper of the Champion company, and knew in a general way that the consideration of notes received by the company was its machines. He had no personal knowledge of the consideration of this note, or the failure of the warranty in the sale of the machine, or of any other matters connected with it. The note was brought to him by the cashier of the Champion company for discount, in the ordinary course of business. After having been discounted, it was held by the bank until sent forward for collection. Suit was commenced March 11, 1882. Amos Whitely, the president of the machine company, who indorsed this note, was a director of the plaintiff bank, and one of the three members constituting its discount committee at the time this note was discounted. The note was never formally presented to the discount committee, but it was discounted by the cashier, under general instructions from the officers to discount any paper offered by certain customers of the bank, included among whom was the Champion machine company. These instructions were given by the president, and perhaps, according to the testimony of the cashier, by Amos Whitely, also. Prior to the first of January, 1882, Amos Whitely was in the habit of visiting the bank once or twice a week, and was as familiar with its business as directors usually are.

His connection with the Champion machine company was not only as president, but also as its actual business manager.

Further, at the time of discount no money was paid directly to the machine company, but the amount of the discount, $142.14, was credited to the account of the machine company. At that time, and since, up to the time of the commencement of this action, the machine company carried an average balance of several thousand dollars in the bank.

This, we believe, covers all the material testimony. All bearing upon the indorsement and transfer of the note to plaintiff, and the relations of the Champion machine company to the plaintiff, was in the deposition given by the cashier of the plaintiff. Upon this testimony two important questions arise: First, did the bank take with notice of the defense to the note? second, had it so paid for the note that it could claim the benefits of a *bona fide* purchase for value?

Upon the first question, we remark that the knowledge of the general agent of the Champion machine company was the knowledge of the company. Therefore, at the time it indorsed the note to plaintiff it knew of its infirmity; hence, if the bank was chargeable with notice of what the company knew, then it was not a *bona fide* holder without notice. Now the president and general business manager of the machine company was, as stated, a director and one of the three members of the discount committee of the bank. He knew what the company knew of the infirmity of the paper. As president and general business manager he knew, because the company knew, that the warranty in the sale of the machine had failed, and that therefore the makers had full defense against this note. Is the bank chargeable with the notice of what Amos Whitely, a director and member of its discount committee, knew? The mere fact that Whitely was a director would not, it seems, charge the bank with notice of what he knew. In Wade on the Law of Notice, §§ 682 and 683, the author thus states the rule:

"Accordingly, in a case where one of the directors of a bank had notice of the fraudulent perversion from the ob-

jects for which they were drawn, of certain bills, and with that knowledge was present at a meeting of the board where the same bills were presented for discount, his knowledge was properly held to be the knowledge of the bank. However, the mere fact that a bank director is in possession of certain knowledge which would prevent his becoming an innocent holder would not affect the bank if the paper should be received there and discounted without his knowledge. It could hardly be his duty to report to his bank every fact coming to his notice in relation to all the negotiable paper of which he may have any knowledge, where he had received no intimation that such paper would be presented there for discount."

The authorities cited in the notes seem to sustain the general doctrine laid down in this quotation. (*Bank v. Senecal*, 13 La. 525; *Insurance Co. v. Insurance Co.*, 10 Md. 517; *Bank v. Paine*, 25 Conn. 444; *Bank v. Hart*, 3 Day, 491; *Bank v. Lewis*, 22 Pick. 24; *Bank v. Norton*, 1 Hill, 572; *Bank v. Davis*, 2 id. 463; *Bank v. Aymar*, 3 id. 263.) So that the mere fact that Whitely as a director of the bank knew of the infirmity in the paper, would not charge the bank with notice unless he in some way participated in the discount. But there is a fact beyond that of directorship: Whitely was one of the three gentlemen constituting the discount committee of the bank. While as a director he had a general supervision over the affairs of the bank, as a member of the discount committee he was charged with a special duty covering its discounts. And the question as it really stands is narrowed to this: Can an officer of a bank, charged with a special duty, by a general instruction to another officer to perform that duty, in a certain class of cases, relieve the bank from responsibility for notice of facts which it would unquestionably have known and been responsible for if he had discharged such official duty? In Morse on Banks and Banking, page 113, the author says:

"In the case of knowledge required by or communicated to any other officer than a director, little difficulty can arise. The president, it should be remembered, is a director; but his duty of general supervision is more general than that of

any other member of the board. Wherefore, notice to him on any subject would probably be held to be notice to the bank. If it fall within the scope of the agency and official employment of the officer, it is notice to the bank." (See also *Bank v. Davis*, 2 Hill, 463.)

We think it is a question of grave doubt whether public policy will permit an officer of a bank, charged with a spe-cial duty, to surrender the actual performance of that duty to any other officer, and thereby relieve the bank from the responsibility which would rest upon it had he properly dis-charged his duty. We shall not, however, absolutely pass upon that question, for we think upon the other question presented the ruling of the district court was erroneous, and must be reversed.

In reference to that question, it will be observed that the bank in fact paid nothing to the company at the time of the discount. It simply credited the company on its books with the amount of the discount, and thereby enlarged the com-pany's account with the bank. It is not a case in which the company's account was overdrawn, and in which it was in-debted to the bank, which indebtedness was reduced by the amount of the discount. On the contrary, the bank owed the company, and it simply, by the discount, increased the amount of this indebtedness, an indebtedness which continued until after suit was brought, and the bank had full notice of the defense. Now conceding that the bank was a *bona fide* holder, that it acquired title, in the first instance, without any notice of any infirmity, to what extent is it protected? The general rule in such cases is, that a *bona fide* holder is protected to the amount he has paid, or lost, by virtue of the discount. In the case of *Dresser v. The Construction Co.*, 93 U. S. 92, it was held that a *bona fide* holder of negotiable paper pur-chased before its maturity, upon an unexecuted contract, on which part payment only had been made when he received notice of fraud and a prohibition to pay, is protected only to the amount paid before the receipt of such notice. In the opinion, which covers simply that point, the authorities are

fully cited, and the conclusion reached is the unanimous opinion of the court. In *Bank v. Valentine*, 18 Hun, 417, it is held that the mere discounting of a note, and giving a party credit on the books of the bank for the amount thereof, does not constitute the bank a holder for value. A similar proposition is laid down in *Dougherty Bros. & Co. v. The Bank*, 93 Pa. St. 227.

We do not cite the various cases in support of the general proposition, for they are fully cited and discussed in the opinion of the court in 93 U. S., *supra*. The proposition rests on the plainest principles of justice, and in no manner impairs the desired negotiability and security of commercial paper. Whenever the holder is a *bona fide* holder, he has a right to claim protection, but protection only to the extent he has lost or been injured by the acquisition of the paper. If he has parted with value, either by a cash payment or the cancellation of a debt, or giving time on a debt, or in any other manner, to that extent he has a right to claim protection; but when he has parted with nothing, there is nothing to protect. A mere promise to pay is no payment. He may rightfully say to the party from whom he purchased: "The paper you have given me is valueless, and therefore I am under no obligations to pay;" and if the paper be in fact valueless, payment cannot be compelled. Now the relation of a bank to its depositor is simply that of debtor. The bank owes the depositor so much. If the deposit is valueless its obligation to pay is without consideration, and it may decline to pay. There is nothing in the relation of a bank to its depositor which takes its obligation to its depositor out of the general rule of debtor to creditor. The case of *Bank v. Crawford*, 2 Cin. Superior Court, cited by defendant in error, is a case in which the depositor's account was overdrawn, and the discount therefore was practically the payment of an antecedent debt. In such a case the bank, having taken the paper in payment of an antecedent debt, was entitled to protection to the amount of such debt. (*Draper v. Cowles*, 27 Kas. 484.)

We therefore think that the bank, having paid nothing

at the time of its discount, having simply increased its debt
to the depositor, the machine company, and that debt remain-
ing unpaid at the time suit was brought, and it having re-
ceived actual notice of the infirmity of this paper, cannot
claim the protection of a *bona fide* holder for value.

We see nothing in the case of the *Railroad Co. v. The Bank*,
102 U. S. 14, which conflicts with this conclusion.   At least,
there is nothing in the decision as applicable to the facts of
that case which conflicts, nor in the illustrations made by the
learned judge who wrote the opinion of the court.   And
while there are some expressions in that opinion which may
seem to conflict, we do not understand that the court means
in any way to overrule the prior case in 93 U. S., *supra*.
We think, therefore, the district court erred in its peremp-
tory instructions to find for the plaintiff; that the judgment
must be reversed, and the case remanded for a new trial.
(See also *Jordan v. Bank*, 74 N. Y. 467;  *Bank v. Bank*, 1
Hall, 619;  *Bank v. Bank*, 46 N. Y. 82;  *Hubbard v. Chapin*,
2 Allen, 328;  *Stevens v. Bank*, 3 Hun, 147;  *Holcomb v. Wyckoff*,
35 N. J. L. 36;  *Holmon v. Hobson*, 8 Humph. 127;  *Bank
v. Chapin*, 8 Metc. 40;  *Williams v. Smith*, 2 Hill, 301;  *Todd
v. Shelbourne*, 8 Hun, 510;  *Butler v. Harrison*, 2 Cowp. 565;
*Garland v. Bank*, 9 Mass. 407;  *Clark Nat. Bank v. Bank*,
52 Barb. 592;  *Platt v. Chapin*, 49 How. [N. Y.] 318.)

The judgment will therefore be reversed, and the case re-
manded for a new trial.

All the Justices concurring.