VAN WINKLE GIN AND MACHINERY COMPANY v. CITIZENS' BANK OF
BUFFALO.

No. 376.—Decided January 27, 1896.

1. **Notice—Pleading—Amendment.**

On the question of the time of notice to plaintiff of failure of consideration for the obligation sued on, which failure was set up in an amended answer by defendant, it will be presumed, in the absence of evidence as to the contents of the original answer, that the same defense was there presented, and the taking of depositions of the officers of the defendant bank showing that such defense was claimed was sufficient to put them on inquiry. (P. 150.)

2. **Draft—Indorser and Indorsee—Suit Against Acceptor.**

In a suit against the acceptor of a draft, resident in Texas, brought by an indorsee who took it before maturity and in the ordinary course of trade, where the 'consideration for the acceptance had failed. and both indorser and indorsee were residents of New York, plaintiff having in his hands funds sufficient to cover' the amount of the draft, belonging to the drawer for whose benefit and at whose expense he was bringing the suit; held, that the indorsement of a bill of exchange is an independent and complete contract on the part of the endorser to pay to the indorsee on protest, etc., and the holder was under no obligation to the indorser to leave the State of their domicile and pursue the acceptor in Texas. (P. 152.)

3. **Same—Application by Indorsee of Funds of Drawer.**

In such case upon non-payment and protest and at any time thereafter during the continuance of the liability the indorsee had the right to apply any moneys belonging to the indorser coming into its hands in due course of the business to the payment of the indorser's liability upon such contract. (P. 153.)

4. **Same—Innocent Holder.**

While the law protects the innocent holder of negotiable paper at the expense of the negligent but innocent acceptor, it does not permit the former to use his vantage ground for the purpose of going beyond his protection. The doctrine upon which courts allow him to recover extends no further than is necessary to his complete protection, and can not be extended so as to allow such holder to pervert the equitable principles upon which it is based for the purpose of aiding one party to a commercial instrument in obtaining an advantage over another. (Pp. 153-154.)

5. **Same.**

The facts in such case forbid the plaintiff, although an innocent holder of commercial paper, to maintain its suit against the acceptor for the benefit of the drawer and at his expense, the indorsee having ample funds of the drawer to meet the claim and the acceptor having a valid defense against the drawer and indorser. (Pp. 154-155.)

ERROR to Court of Civil Appeals for Fifth District, in an appeal from Dallas County.

The suit was brought by the Citizens' Bank against the Van Winkle Gin & Machinery Co. to recover the amount of an accepted draft drawn on it by the Buffalo Forge Co. Plaintiff had judgment for the amount of the claim and defendants, appealing to the Court of Civil Appeals, where the judgment was affirmed, then obtained this writ of error.

*Harris & Knight,* for plaintiff in error.—Where the endorser of a bill of exchange directs the endorsee to institute suit thereon against the acceptor and agrees to stand the expense of the suit, he becomes bound by

the result of the litigation as though he were a party to it, and he is a party by representation, and in such case, whatever may be the rule otherwise, the defendant, upon showing a failure of consideration, can require the plaintiff to apply funds in its hands to the satisfaction of the debt,. and can plead the indebtedness to the payee against such claim in offset. 1 Herman on Estoppel, 167, sec. 156; 2 Black on Judgments, 539, 573,. 574, et seq.; 1 Freeman on Judg., secs. 174, 181; Tyree v. Magness, 1 Sneed, 276; Hagerthy v. Bradford, 9 Ala., 567; City of Boston v. Worth-- ington, 71 Am. Dec., 678; Littleton v. Richardson, 66 Am. Dec., 759;. Nashville Lumber Co. v. Bank, 27 Law. Rep. Ann., 519.

2. The court erred in holding that the defendant, having shown a. total failure of consideration for the instrument sued on, could not plead,. by way of offset against the same, the deposit of the Forge Co. (the endorser) in the defendant bank; especially when it was shown that both plaintiff and the endorser reside in Buffalo, N. Y., beyond the jurisdiction of this court, and that said endorser had directed this suit to be· brought and had assumed the expense thereof. Huyler v. Dahoney, 48 Texas, 235; Durst v. Daugherty, 81 Texas, 650; 2 Pom. Eq. Jur., secs. 950, 751; 16 Am. and Eng. Encycl. Law, 835; 2 Am. and Eng. Encycl. Law, 96.

*Thompson & Thompson,* for defendant in error.—The question to which we desire to call the attention of the court is: Should the defendant in error have applied to the payment of the draft any money of the Buffalo Forge Company which it may have had in its possession at the time it received notice of the defense of plaintiff in error, and does its. failure to so apply any such money prevent it from recovering in this suit, and relieve plaintiff in error of liability to it on said draft?

In the first place it devolves upon the plaintiff in error to fix the date· when the bank received notice, and also the amount of money then on deposit with it to the credit of the Forge Company.

There is no proof that defendant in error ever at any time received any notice other than that given by the filing of the answer. The an-- swer upon which defendant went to trial was filed April 8, 1893.

If, however, the court should be of opinion that the bank had money of the Forge Company on deposit when it received notice of the failure of consideration and the court is satisfied what that amount is, then did the bank have the right to appropriate this money—all of it, or a part of it— to the payment of the draft, and is plaintiff in error relieved of liability, and must a judgment be rendered in its favor in this action because the defendant in error failed to so appropriate said money? At the outset of the discussion of this question we desire to emphasize this fact: the plaintiff in error is the acceptor of the draft sued upon. The Forge Company is the drawer and indorser. We submit in the following propositions what we conceive to be the liability which an acceptor of negotiable paper assumes and the defenses he may interpose to the payment of said paper in the hands of a third party who acquires the same in due course of busi--

ness for value, before maturity, without notice.    In connection with these propositions we will cite the authorities which we think sustain them:

(1)    The acceptor is primarily liable at all events, is the principal ,debtor and occupies the same position to the accepted draft that the maker does to a promissory note.    Van Alstyne v. Sorley, 32 Texas, 518; Rische & Sons v. Planters Bank, 84 Texas, 419; Randolph Com. Paper, vol. 2, sec. 628; 3 Kent (13th Edition), side page 86, bottom page 119; 1 Daniel Neg. Insts., secs. 532-4 and notes; Story Prom. Notes, secs. 418-423; Diversy v. Moor, 22 Ill., 330 (74 Am. D., 157); Cronise v. Kellogg, 20 Ill., 11; Raborg v. Peyton, 2 Wheat., 385; Wallace v. McConnell, 13 Peters, 136.

(2) The acceptor of an accommodation paper in the hands of a third: party with notice of the accommodation character of the paper is, as to such third party, the principal debtor and primarily liable.    Randolph, vol. 2, sec. 628; Byles, 199; Chitty, 343; Hamilton v. Catchings, 58 Miss., 92; 1 Edwards, sec. 597; and authorities under first proposition.

(3)    The acceptor of a draft, the consideration for which has failed, is, as to a third party who acquired paper before maturity without notice of said failure, the principal debtor and primarily liable, and will not be permitted to insist that the consideration 'has failed.    Daniel Neg. Insts., vol. 1, sec. 547; Randolph, sec. 628, vol. 2; Marsh v. Low, 55 Ind., 271; Corbin v. Southgate, 3 Hen. & M. (Va.), 319; Arthurs v. Hart, 17 How., 6; Goetz v. Kansas City Bank, 119 U. S., 551; Nowak v. Excelsior Stone Co., 78 Ill., 307; 6 Colo., 555; 33 N. W. Rep., 555.

(4)    Under none of the above conditions does the acceptor become a ·surety for the drawer as to said third person holding the paper, so as to require him to look first to the drawer or to funds of the drawer for the payment of the draft.

(5) It is not allowed to an acceptor to say that he is a surety.    To him the equitable doctrines respecting sureties do not apply.    Anderson v. Anderson, 4 Dana (Ky.), 352; Diversy v. Moor, 74 Am. D., 157; King v. Doane, 139 U. S., 166.

(6)    The acceptor of accommodation paper even, is not discharged by the delay of the holder to bring suit against the drawer until he becomes insolvent, nor is the acceptor discharged by failure to sue on request of acceptor.    Diversy v. Moor, 74 Am. D., 157; Daniel, vol. 1, sec. 546; Anderson v. Cleveland, 13 East, 430; Raborg v. Peyton, 2 Wheat., 385; Story on Bills, sec. 268.

(7)    Under the facts in this case nothing can discharge the acceptor but payment.    Cronise v. Kellogg, 20 Ill., 11.

(8)    The liability of plaintiff in error became fixed and determined on July 25, 1892, when defendants in error acquired the paper, and by the happening of subsequent events no additional obligations were imposed upon defendant in order to secure the payment of its debt from the acceptor.    Rische & Sons v. Planters' Bank, 84 Texas, 419; Cromwell v. Sac County, 96 U. S., 51; Marion County v. Clark, 94 U. S., 278; Scotland Co. v. Hill, 132 U. S., 107.

(9)   The Buffalo Forge Co. is liable simply as an indorser, and under Texas Statutes could not even be sued on this paper without plaintiff in error being joined or the allegation being made that plaintiff in error was insolvent or a non-resident.   Daniel Neg. Insts., sec. 669a.

DENMAN, ASSOCIATE JUSTICE.—On the 27th day of June, 1892, the Buffalo Forge Company, a partnership doing business in Buffalo, New York, drew on the Van Winkle Gin and Machinery Company, of Dallas,. Texas, the following instrument:

"$1930  50-100.                              Buffalo, N. Y., June 27, 1892.

"Four months after date pay to the order of ourselves nineteen hun-- dred and thirty 50-100 dollars.   Value received, with exchange on Buffalo or New York.

"To Van Winkle Gin and Mchy. Co.,                    Buffalo Forge Co.
"No. 10195.                    Dallas, Texas.          W. F. Wendt, Sec'y."

A few days thereafter the said drawee accepted said bill in the following words:   "Accepted, payable at National Exchange Bank, Dallas, Texas. Van Winkle Gin and Machinery Co., W. E. Elam, Mgr."

On the 25th day of July, 1892, the Buffalo Forge Co. endorsed said accepted bill in blank to the Citizens' Bank of Buffalo, a corporation engaged in the banking business at Buffalo, New York; said bank paying value therefor, without any notice of any defense or failure of consideration.   The consideration for the acceptance of said instrument was the sale by the Buffalo Forge Co. of certain machinery manufactured and warranted by it to be adapted for the purposes for which it was intended, and which wholly failed to answer such purposes after the acceptance of said bill, whereby the consideration for said acceptance failed; of which fact the Buffalo Forge Co. was notified September 16, 1892.

Upon the maturity of the bill it was presented for payment, which being refused, it was duly protested and notice thereof given all of the parties to the same.

On the 18th day of November, 1892, the Citizens' Bank of Buffalo, indorser and holder of said bill, brought suit thereon against the Van Winkle Gin and Machinery Co., acceptor, for the face of the instrument. and protest fees.

The defendant filed its original answer on the 29th day of November, 1892, which is not contained in the record.

On the 23d day of February, 1893, the depositions of the president, cashier and bookkeeper of said bank were taken, disclosing the fact that the Buffalo Forge Co. had been for some time a regular customer of said bank and had to its credit therein at the date of the filing of the suit $2300, and at the date of the taking of such depositions $2880, and was entirely solvent; that upon the non-payment of the bill it was not presented to the Buffalo Forge Co. for payment, and according to the testimony of the cashier, which is not contradicted: "The paper was sent by us to Dal-

las, Texas, and has never been returned.   We were requested by the Buffalo Forge Co. to bring suit on it there.   W. F. Wendt has stock in the bank and is a director and has been since October, 1890.   The Buffalo Forge Co. stands the expenses of this suit if we are defeated."

There is nothing in the record tending to show whether the balance of $2880 to the credit of the Forge Company in said bank on February 23, 1893, was ever drawn out.

The depositions of said officers disclose the fact that they were fully interrogated in the interrogatories upon which said depositions were taken in regard to the failure of consideration for said bill and acceptance, and as to whether said bank had notice thereof at the time it acquired same.

On the 8th day of April, 1893, the defendant filed its first amended original answer amending and substituting its original answer filed November 29, 1892, as aforesaid, and pleaded, among other things, said failure of consideration; that plaintiff was informed thereof about the date of the maturity of the bill;   that said Buffalo Forge Co. then had to its credit on the books of plaintiff bank more than $2300, which plaintiff could have immediately applied thereto; that for the purpose of defrauding defendant said bank entered into a fraudulent combination and conspiracy with said Buffalo Forge Co. whereby it agreed, at the expense of said company, to prosecute this suit in the name of the bank and thereby attempt to defeat the plea of failure of consideration; that pursuant to such combination this suit was filed, and the Forge Company was permitted to draw out such balance; that afterwards it made other deposits with said bank, and now has to its credit therein a sum in excess of that sued for, which said bank is at liberty to apply on such debt, but refuses to do so pursuant to said conspiracy; that the bank, on account of such deposits, is indebted to the Buffalo Forge Co. in a sum largely in excess of the amount sued for herein, to wit:  the sum of $3000, which it prays it may be compelled to offset against the indebtedness sued on

The plaintiff, by supplemental petition filed May 12, 1893, pleaded that it acquired said bill of exchange in the regular course of business, for a valuable consideration, before maturity, without any notice of any failure of consideration or other defense thereto.

On the trial of the cause without a jury the court found that the consideration for said instrument had failed as claimed by defendant, but that said bank had no notice thereof at the time it acquired same, and rendered judgment in favor of the bank against the Van Winkle Gin and Machinery Co. for the amount of the bill and protest fees, which judgment having been affirmed by the Court of Civil Appeals, defendant below, as plaintiff in error here, makes the following assignment of error: "The court erred in holding that defendant, having shown a total failure of consideration for which the instrument sued on was executed, could not plead by way of offset against same the deposit of the Forge Company in plaintiff's bank, especially when it was shown that both plaintiff and the Forge Company resided in Buffalo, New York, beyond the jurisdic-

tion of this court, and the latter had directed this suit to be brought and would stand the expense thereof," and also urged in various assignments that the court erred in allowing the bank to recover on its plea of innocent holder of commercial paper.

It is contended by defendant in error that the record does not show any notice to the bank of failure of consideration until the amended answer was filed on April 8, 1893, and that there is no evidence that at that time the Buffalo Forge Company had any deposit in the bank. The record shows that the original answer was filed November 29, 1892, but does not show the contents thereof. We are of the opinion, however, that, in the absence of anything in the record indicating the contrary, it should be presumed that the pleadings on file when the depositions were taken raised the issue of failure of consideration about which the officers of the bank were interrogated, and especially so since the amended answer fully sets up such a plea, together with various other pleas, and it does not appear from the record in what respect the amended pleading differs from the original. Again, it would seem that the non-payment of the bill, its protest and notice thereof to the bank and to the Forge Company, which had previous knowledge of the failure of consideration, the institution of the suit, the filing of the answer, the taking of the depositions of the officers of the bank, and their examination at length as to whether they had notice of the failure of consideration claimed by defendant at the date of the endorsement of the bill to the bank, if not conclusive of the question of actual knowledge of failure of consideration at the date that the depositions were taken, should be held sufficient to put the bank upon inquiry, and since there is no proof of inquiry made by it, it should be charged with notice of such failure of consideration at the time such depositions were taken. Ball, Hutchings & Co. v. Presidio County (29 S. W. Rep., 1042), 88 Texas, 60.

In order to determine whether the Van Winkle Gin and Machinery Co. have the right in equity to have the amount deposited to the credit of the Forge Company in the plaintiff bank offset against the bill of exchange sued on, it will be necessary to examine and determine the nature of the contract of indorsement and the rights of the bank in reference thereto, as well as its relation to its depositors, as far as they affect the question under discussion.

By its endorsement the Buffalo Forge Co. in effect contracted that if when duly presented said bill was not paid by the acceptor it, the endorser, would, upon due and reasonable notice being given of the dishonor, pay the same to the indorsee bank; and the subsequent presentment and protest fixed its liability upon said contract of indorsement to pay to the bank immediately the amount of said bill and costs of protest. This is an independent and complete contract on the part of the indorser to pay to the indorsee said sums, and the bank was under no obligation whatever to such indorser to leave the State of their respective domiciles and pursue the acceptor here. Ross v. Jones, 22 Wall., 576; Sterling v. Trading

Co., 11 S. & R. (Pa.), 179; Faulkner v. Faulkner, 73 Mo., 336; Moore v. Britton, 22 La. Ann., 65.

As soon as the liability of the indorser was fixed by the non-payment and protest, and at any time thereafter during the continuance of such liability, the indorsee bank had the right to apply any moneys coming into its hands in due course of business belonging to such indorser to the payment of the indorser's liability upon such contract, and the indorser had no right in law or equity to compel the bank to proceed against the acceptor, but upon payment of the bill he would have had the right to its surrender, whereupon he might have proceeded against the acceptor.   11 Mo. App., 144; 15 East., 428; 1 Esp., 66; 1 Rose, 232; 19 Ves. Jr., 25; 34 Barb., 298.

The relation of the bank to its depositors is that of debtor and creditor, and its right to offset its indebtedness to the depositor against the indebtedness of the latter to it is of an equitable nature intended for its protection, and does not depend upon any statute in relation to offsets. It is generally said that it is optional with the bank whether it will avail itself of this right.   32 Mo., 191; 6 N. Y., 271; 34 Barb., 298; 2 N. Y., 352; 6 Wend., 610; 21 Me., 426; 16 Week., No. Cas., 509.

The instances in which it has been held that the bank had the absolute right to determine whether it would or would not exercise its privilege were cases in which it was not appealing to the courts to apply any equitable principle in order to allow it to recover, as the Citizens' Bank of Buffalo is doing here against an innocent party to the paper who, but for the application of such principle, could not be held liable.

If the Buffalo Forge Co. had not transferred the bill before maturity, or if at the time of the indorsement the bank had known of the failure of consideration, it is clear that such failure would have been a complete defense.   This is not disputed.   McDonald Mfg. Co. v. Moran, 52 Wis., 203; Mann v. Natl. Bank, 30 Kan., 412.

But, although in good conscience plaintiff in error ought not, as between it and the Buffalo Forge Co. or any one claiming under or through the latter with notice, to be held to pay the bill, nevertheless it will not be allowed to assert its defense to the prejudice of the indorsee bank, because the latter has invoked the protection thrown round it by the law as an innocent purchaser.   As between the acceptor and the innocent holder, the latter will be absolutely protected, because the former has carelessly launched upon the market its unqualified promise to pay, whereby the latter was induced to acquire same.

But while the law protects the innocent holder at the expense of the negligent but innocent acceptor, it does not permit the former to use his vantage ground for the purpose of going beyond his protection and willfully inflicting on the latter a wrong in order to favor the fraudulent indorser who in justice and good conscience ought to pay the bill.

In discussing this principle, in the case of Wright v. Hardie, 88 Texas, 657 (32 S. W. Rep., 887), this court, through Chief Justice Gaines, say: "The doctrine which protects a bona fide purchaser of negotiable paper

for value is maintained in part upon principles of commercial policy, but has a deeper foundation in the principle of an equitable estoppel. The maker of a promissory note, by signing and delivering it to the payee, asserts its validity, and by making it payable to the bearer, or to the order of the payee, holds out an invitation to all the world to deal with it, as evidencing a valid debt. For that reason, and upon the principle that he who trusts most should suffer most, the law shuts off, as against an innocent holder, any defense the maker may have against the payee, in so far as it may be necessary to protect such holder in the rights acquired by his transfer. A recovery of so much upon the collateral paper as is necessary to discharge the debt secured is requisite for the protection of an innocent holder, although, as between the maker and payee of the note, the hypothecation may have been fraudulent. More than this the holder cannot claim in his own right, nor can he claim as trustee of the transferrer of the instrument, because the maker owes the latter nothing. Accordingly, we find that it is generally held that the pledgee in such a case is limited in his recovery to the amount of his debt."

Whether the doctrine upon which the courts allow the innocent holder of commercial paper to recover against the negligent but innocent acceptor maker is based upon broad principles of public policy intended to foster commerce, or upon the principles of an equitable estoppel, or both, it is clear that it extends no further than is necessary to the complete protection of the innocent holder, and cannot be extended so as to allow such holder to pervert the equitable principles upon which it is based for the purpose of aiding one party to a commercial instrument in obtaining an undue advantage over another.

The bank had the undoubted right to say to the Forge Company: "You have indorsed us a paper which, as between you and the acceptor, the latter ought not to pay. We have money belonging to you in our hands sufficient to satisfy your contract of indorsement now due, and we elect to avail ourselves of our equitable right to apply the same as an offset and in settlement of your contract and return to you the paper, rather than pursue the innocent acceptor in another jurisdiction, especially since such pursuit cannot possibly be necessary for our protection. We will not use the shield thrown round us by law solely for our protection as innocent purchasers as a subterfuge to aid you in enforcing through us an unjust demand." Such a position would have been unassailable in morals and in law. The bank, however, elected the contrary.

The case then comes to this: the indorser in good conscience should pay, the bank has its funds in its hands sufficient to satisfy the demand with a perfect right in equity to offset same in satisfaction of the bill; the pursuit of the acceptor in a foreign jurisdiction is clearly not necessary to the bank's protection, but can only serve to allow the indorser to avail himself of the protection given by law to an innocent purchaser in order to cut the acceptor off from a just defense and compel it to pay a sum of money which in equity it should not pay.

Under these circumstances, with knowledge of the failure of considera-

tion, probably at the time of the filing of the original answer, but certainly when the depositions of its officers were taken as above stated, it presses the claim to judgment upon its plea of innocent purchaser, in a suit instituted at the instance and expense of the endorser. While expressly waiving its equitable right to offset the deposit, conferred upon it by law for its protection and which appears in this case to have been adequate to its complete protection, it invokes the application by the court of another equitable principle, not for its protection, but for the sole and evident purpose of aiding the endorser to obtain an undue advantage over the acceptor. We are of the opinion that under these circumstances, and for such a purpose, the bank was not entitled to the protection afforded by law to an innocent holder, and that, as between it and the acceptor, the deposit should be offset against the bill.

The judgments of the court below and the Court of Civil Appeals will therefore be reversed, and judgment will be here rendered that defendant. in error take nothing by its suit.

*Reversed and rendered.*