The evidence in this case not only does not show that at the time of the sale it was not necessary to make the sale for the purpose of carrying out the provisions of the will for the maintenance of the widow and children, but it conclusively shows the contrary.

Finding and decree in favor of plaintiffs as prayed for in their petition.

**Burrows** and **Laubie, JJ.**, concur.

---

## BANKS AND BANKING—BILLS, NOTES AND CHECKS.

[Hamilton (1st) Circuit Court, February 7, 1907.]

Jelke, Swing and Giffen, JJ.

CHARLES G. BLAKE V. HAMILTON DIME SAV. BANK.

1. PAYEE PROCURING CERTIFICATION OF CHECK CANNOT STOP ITS PAYMENT TO HIS INDORSEE.

A check certified by the drawee bank at the request of the payee thereof is the obligation of the bank, which when indorsed according to the terms of the certificate and delivered is payable to bearer or indorsee on demand free from any claim of the drawer and he has no authority to stop its payment; although if certification had been procured by the drawer before delivery to the payee the drawer might stop payment thereof to the payee.

[For other cases in point, see 1 Cyc. Dig., "Bills, Notes and Checks," §§ 542, 543.—Ed.]

2. RELATION OF BANK AND DEPOSITOR OF CERTIFIED CHECK IS THAT OF DEBTOR AND CREDITOR ONLY.

Receiving a certified check of another bank and crediting it to the account of a depositor upon his indorsement thereof does not make the receiving bank a purchaser for value. The relation between the depositor and bank being that of debtor and creditor, and the bank gets only such title therein as its depositor had.

[For other cases in point, see 1 Cyc. Dig., "Banks and Banking," §§ 133-140.—Ed.]

[Syllabus approved by the court.]

ERROR to Hamilton common pleas court.

**Burch & Johnson,** for plaintiff in error.

**Murphy & Williams** and **Pogue & Pogue,** for defendant in error.

## SWING, J.

This was an action in the court of common pleas by the defendant in error against the Franklin bank on a certified check, which check is as follows:

30 O. C. C. Vol. 29.

Hamilton County.

"Office of C. G. Blake & Co.,
"Wholesale Coal & Coke, First National Bank Building.

"No. 12360.                    Cincinnati, Ohio, Oct. 16, 1903.
"The Franklin Bank.

"Pay to order of C. G. Blake two hundred and seventy-five dollars.
"275.                              C. G. BLAKE & Co."

Across the face of the check the following appears:

"Good for $275 when properly indorsed. The Franklin Bank, H. Sachteleben, Teller."

The following indorsements appear on the check:

"Pay to order of Charles Werbel.

"C. G. BLAKE,
"CHARLES WERBEL."

The facts show that on October 19, 1903, the said Charles Werbel deposited said check with the Hamilton Dime Savings bank and was given credit on his account for the amount of the check. At the time of the deposit Werbel had to his credit over $800 and has always had to his credit in said bank a sum largely in excess of the amount of the check. Said check was presented to the Franklin bank, but payment was refused, and thereupon the Dime Savings bank, to wit, on October 20, 1903, brought its action against the Franklin bank. Afterwards the Franklin bank filed an affidavit for interpleader saying that it was ready and willing to pay said sum into court, and that C. G. Blake had notified it not to pay said check, and that he claimed to be owner of the same. And thereupon said bank by order of court paid said sum into court.

C. G. Blake was made a party and filed an answer, in which he admitted the check was a certified check, and that the check was certified by the Franklin bank at his request, and that the same was delivered by him to said Charles Werbel; that said plaintiff is not the owner or holder of said check; that said Werbel delivered the same to said plaintiff after notice to said Werbel that payment of the check would be stopped, and that plaintiff received the check with full knowledge of the same. Then follows allegations setting forth the transaction which brought about the giving of the check.

It was all about the purchase of a horse by said C. G. Blake from said Charles Werbel. The horse was represented by said Werbel to be sound, a good and quiet driver, not afraid of the cars; any woman could drive him, and only six years old; whereas he was eight or ten years old, unsound, afraid of the cars, and no woman could drive him.

Plaintiff denied the allegations of Blake's answer

Blake v. Bank.

. A jury was waived and the cause tried by the court. The court found for the plaintiff and at request of counsel stated its conclusions of fact and law separately. Blake prosecutes error to said judgment and asks for a reversal, the main ground relied on being, that said judgment is contrary to law.

There is virtually no dispute about the material facts pertinent to the issue, if the question about soundness of the horse cannot be brought into the case and the court below ruled out such evidence.

The admitted facts are: That the firm of C. G. Blake & Co., of which said C. G. Blake is a member, drew its check on the Franklin bank for $275, in favor of said C. G. Blake, on October 16, 1903; that said C. G. Blake presented said check to said bank and had the same certified by the teller of said bank, indorsing on said check in the usual form, "good" for $275; that after said check was certified he (Blake) indorsed the same and delivered it to said Charles Werbel in payment of a horse which he had purchased from said Werbel; that said Werbel transferred said check to said Dime Savings bank and was credited in his account with said bank to the amount of the check on October 19, 1903; that at the time of the deposit the bank had no knowledge of any claimed infirmity in the check; that there was, and that there remained in the bank, until the commencement of these proceedings, to the credit of Werbel, a sum in excess of the amount of the check.

From these facts the following conclusions must be drawn: That Blake intended to change the check of Blake & Co. into the certified check of the Franklin bank, in order to give Werbel a better security free from any rights of Blake & Company in the check, and that Blake intended by delivering the check to Werbel that it was in fact a full and complete payment for the horse, and that Werbel accepted it as such; that when Blake got the horse and Werbel got the certified check the sale was completed and each was rightly in possession of what he had—one the horse and the other the check—and Werbel had no further interest in the horse and Blake had no further interest in the check.

We think, as a matter of law, that the Dime Savings bank was not a purchaser for value. When it took the check from Werbel and credited it to the account of Werbel, it parted with nothing and the only relation that existed between them was one of debtor and creditor, and the bank got only such title as Werbel had. This is clearly shown by the authorities cited by counsel for Blake and many others in the same line. See *Mann* v. *Bank*, 30 Kan. 412; *New York Cent. Nat. Bank* v. *Valentine*, 18 Hun 417; *Manufacturers' Nat. Bank* v. *Newell*, 71 Wis. 309 [37 N. W. Rep. 420]; *Thompson* v. *Bank*, 150 U. S. 231 [14 Sup. Ct. Rep. 94; 37 L. Ed. 1063].

Hamilton County.

The question then must turn on the right of Werbel as against the Franklin bank. The bank does not dispute its liability; on the contrary, admits it, and has deposited the amount of the same in court; and the drawer of the check, Blake & Co., is not here claiming any rights as against Werbel. Werbel had nothing to do with the drawing of the check, nor with its certification, and it is admitted that he came into possession of the check rightly. Blake makes no claim otherwise. His claim is, that the horse for which he gave the check is unsound and not as represented by Werbel, but whatever vice there was in the horse could not attach to the check. The check when certified by the bank became the obligation of the bank, which when according to its terms was properly indorsed by C. G. Blake, became payable to bearer, on demand, and, so far as the bank was able to make it, had the attributes of money. Title passed by delivery, and was payable to bearer on demand, and when Blake delivered the check to Werbel, Werbel became the absolute owner of the check free from any claim of Blake to the same extent as if it had been money. 2 Daniels, Neg. Instr. Sec. 1601 *et seq.* Morse, Banking Sec. 414 *et seq.*, and authorities cited by these authors.

If the drawer of the check, C. G. Blake & Co., had procured the certification of the check before delivering the same to C. G. Blake, the rights existing between them would not be the same as in this case— for instance, C. G. Blake & Co. would still be liable to C. G. Blake for the failure of the bank to pay (see *Cincinnati Oyster & Fish Co.* v. *Bank,* 51 Ohio St. 106, 110 [36 N. E. Rep. 833; 46 Am. St. Rep. 560], and authorities cited in Morse, Banking *supra*), and probably C. G. Blake & Co. might have been able to assert some claim against the check in the hands of C. G. Blake. But when C. G. Blake had the check certified, he no longer had any claim against C. G. Blake & Co. His object in having it certified was to release C. G. Blake & Co. and accept the bank as payer, and of course C. G. Blake & Co. had no further claim against the check in the hands of C. G. Blake or anyone else. And when the bank certified the check for its own protection and for its own advantage, it gave to the check the character, that "when properly indorsed"—that is, when C. G. Blake should place his name on it—it should be payable to bearer on demand, and it never intended that C. G. Blake, after he indorsed the check and delivered it to anyone, should have any interest in it, and this we think is the law.

Judgment affirmed.

**Jelke** and **Giffen, JJ.,** concur.