## Johnson County Savings Bank v. J. R. Renfro.

Decided October 20, 1909.

1.—Bills and Notes—Failure of Consideration—Innocent Purchaser—Bank—Deposit.

A bank which was a purchaser for value of time acceptances, having notice of a defense of the acceptor for failure of consideration after its purchase but before maturity of the acceptances, could not avail itself of its right to enforce them as an innocent purchaser where it had funds of the payee on deposit at the time the acceptance fell due, by which it could have protected both itself and the acceptor from loss. But it was otherwise as to such funds on deposit after it had notice of defense but which it permitted to be withdrawn before the acceptance fell due; these it could not so apply to a claim not due.

2.—Same—Guaranty Bond—Estoppel.

The fact that the maker of acceptances having the right to rescind for fraud the contract of sale for which they were given paid two of them before the

fraud was discovered or while making an effort to adjust the dispute over them, will not preclude him from urging his défense against the other acceptances.

Appeal from the County Court of Wilbarger County. Tried below before Hon. J. A. Nabers.

*F. P. McGhee,* for appellant.—Defendant, by paying draft and holding goods for twelve months if he had not sold three-fourths of them, had a right to return them at contract price and get his money for them. This option did not expire until after the association had sold out. Bank could not interfere with contract relations between its depositors, the association and its debtor, Renfro, until it was too late to make the deposit. Homer v. National Bank of Commerce, 140 Mo., 225; Baker v. Kennedy, 53 Texas, 200; Jordan v. National S. & L. Bank, 74 N. Y., 467.

Renfro, by paying two drafts after he knew of quality of goods, is estopped from asking bank to quarrel and litigate with its depositor, the American Jobbing Association, about the payment of these drafts, or at least has waived his right to so contend. Brock v. Jones, 16 Texas, 465; Wells v. Houston, 23 Texas Civ. App., 629.

Plaintiff could not take the deposit of association in satisfaction of last draft due November 13, 1907, because this draft was not due at the time they had the deposit, the 13th of September, 1907. It could not take the September deposit in satisfaction of a November draft because the November draft was not then due. Homer v. National Bank of Commerce, 140 Mo., 225.

*Berry & Lucky,* for appellee.—The endorsement of the drafts sued on by the American Jobbing Association to plaintiff constituted an independent contract on the part of the endorser to pay the endorsee on protest. And the plaintiff was under no obligation to pursue the acceptor (appellee) in another jurisdiction after it learned of the defenses to the paper or had notice of its repudiation, and plaintiff had the right and it was its duty to apply any money belonging to said endorser coming into its hands in due course of business to the payment of the endorser's liability. Sperlin v. Peninsular L. & D. Co., 18 Texas, Ct. Rep., 704.

RICE, ASSOCIATE JUSTICE.—This was a suit by appellant against appellee to recover on three drafts, a series of five, of date November 13, 1906, drawn by the American Jobbing Association on appellee and accepted by him, the last three being each for the sum of $74, all of same being due respectively four, six, eight, ten and twelve months thereafter, the first two having been paid off at maturity.

Appellee purchased from the American Jobbing Association an assortment of jewelry for which these acceptances were given. Subsequent thereto, on the 14th of December, 1906, said Association, for value, endorsed said drafts to appellant herein, who took same without notice of any of appellee's defenses thereto.

The appellee defended on the ground, among other things, of the

failure of consideration of said acceptances in this, that he, not being a judge of jewelry, relied upon the representations of the agent, and was induced to purchase said jewelry by reason of said representation made by said association to the effect that the same were first-class goods, merchantable, and of good quality; whereas, said jewelry proved to be worthless, and said representations were therefore fraudulent. He further plead that plaintiff was not an innocent holder for value, without notice, and further that plaintiff, after it had been informed before the maturity of the acceptances of the fraud that had been practiced upon him in the purchase of said jewelry, and that the consideration for said acceptances had failed, had paid the first two thereof, and that plaintiff had sufficient funds in its hands belonging to said American Jobbing Association before and at the time of the maturity of said last three acceptances to cover same, and which he contended should have been applied in payment thereof.

Appellant, by supplemental petition, further plead that it was an innocent purchaser for value of said acceptances, without notice of the infirmity in said paper, and likewise plead that at the time of the purchase of said jewelry the said American Jobbing Association had executed to defendant a contract of guaranty as to the quality of said jewelry, etc., wherefore he was precluded from asserting any defense against the judgment sought against him.

Upon trial before the court without a jury judgment was rendered in favor of the defendant, from which this appeal is prosecuted.

While there are a number of assignments assailing the correctness of the judgment of the court for several reasons, still, we think it only necessary to notice the principal one, which, in our judgment, is decisive of the questions presented.

Appellant insists that the defendant has no right in equity to set up as against it a failure of consideration of the acceptances, and to urge its failure to apply the funds of the association in its hands to the satisfaction of said acceptances as a defense to this action, since it contends that it was an innocent purchaser of said drafts, for value, before maturity, without notice of any infirmity therein, and especially so, since there were no funds in its hands belonging to the association at the time of the maturity of the last acceptance.

It is, however, urged on the part of appellee that the judgment should be sustained because of appellant's failure, after notice of the fraud and failure of consideration therefor, to apply the funds in its hands belonging to said association to the satisfaction thereof, and this is true notwithstanding he had paid the first two thereof without objection, asserting that it would be inequitable to do so, and cites in support of said insistence the cases of Sperlin v. Peninsula Loan & Discount Co., 18 Texas Ct. Rep., 704 et seq.; also the case of Van Winkle Gin & Machinery Co. v. Citizens' Bank of Buffalo, 89 Texas, 147 et seq. While the case first cited is in its facts very much like the present case, and, in some respects, seems to support appellee's contention, still, in our judgment, it is dissimilar to and distinguishable from the case at bar in this, that in that case it was clearly shown by the proof that the bank, the holder of the acceptances sued upon, was not an innocent purchaser for value; and further, the question was not

raised in that case as to whether there was any deposit in the bank in favor of the drawer of the checks at the time of the maturity thereof.

In the last case cited the record discloses that the bank not only had notice of the infirmity of the paper and the failure of consideration before maturity thereof and before suit was brought thereon, but likewise had at the time of its maturity, and at the time of the institution of the suit, a large amount of money in its hands belonging to the drawer of the drafts sued upon; wherefore, it was held bound, in equity and good conscience, to protect the acceptor of the paper by the application of said funds of the endorser to the payment of said acceptances.   So that, in our judgment, each of those cases presents a different state of facts from those under consideration here, and which, in our opinion, renders them inapplicable to the questions here presented, and therefore of no controlling effect.

It is said by Judge Denman in Van Winkle Gin Co. v. Citizens' Bank, supra: "The relation of the bank to its depositors is that of debtor and creditor, and its right to offset its indebtedness to the depositor against the indebtedness of the latter to it is of an equitable nature, intended for its protection, and does not depend upon any statute in relation to offsets.   It is generally said that it is optional with the bank whether it will avail itself of this right.   32 Mo., 191; 6 N. Y., 271; 34 Barb., 298; 2 N. Y., 352; 6 Wend., 610; 21 Me., 426; 16 Week. No. Cas., 509.   The instances in which it has been held that the bank had the absolute right to determine whether it would or would not exercise its privileges were cases in which it was not appealing to the courts to apply any equitable principle in order to allow it to recover, as the Citizens' Bank of Buffalo is doing here against an innocent party to the paper who, but for the application of such principle could not be held liable.   If the Buffalo Forge Company had not transferred the bill before maturity, or if at the time of the indorsement the bank had known of the failure of consideration, it is clear that such failure would have been a complete defense.   This is not disputed. McDonald Manfg. Co. v. Moran, 52 Wis., 203; Mann v. National Bank of Springfield, Ohio, 30 Kan., 412.   But although, in good conscience, plaintiff in error ought not, as between it and the Buffalo Forge Co., or any one claiming under or through the latter with notice, to be held to pay the bill, nevertheless it will not be allowed to assert its defense to the prejudice of the endorsee bank, because the latter has invoked the protection thrown round it by the law as an innocent purchaser. As between the acceptor and the innocent holder, the latter will be absolutely protected, because the former has carelessly launched upon the market its unqualified promise to pay, whereby the latter was induced to acquire same.   But while the law protects the innocent holder at the expense of the negligent but innocent acceptor, it does not permit the former to use his vantage ground for the purpose of going beyond his protection and wilfully inflicting on the latter a wrong in order to favor the fraudulent endorser who in justice and good conscience ought to pay the bill."

It must be borne in mind, however, that in that case an entirely different set of facts from those here presented were before the court for consideration.   Beside the fact that the bank had ample funds in its

hands, both at the time of the maturity of the paper and at the institution of the suit, with which to have protected itself, and that both it and the drawer of the paper lived in a foreign State, it was further shown that the suit was brought at the instance of the drawer of the draft in that case, who had agreed to hold the bank harmless in the event of a failure of said suit. To show that the court evidently gave much weight to the fact that there was money in the hands of the bank belonging to the endorser at the time of maturity of the paper after notice of its dishonor, and with which it could have amply protected itself, we beg to further quote from the opinion by Judge Denman in the same case, as follows: "The bank had the undoubted right to say to the forge company: 'You have indorsed us a paper which, as between you and the acceptor, the latter ought not to pay. We have money belonging to you in our hands sufficient to satisfy your contract of indorsement *now due,* and we elect to avail ourselves of our equitable right to apply the same as an offset and in settlement of your contract and return to you the paper, rather than pursue the innocent acceptor in another jurisdiction, especially since such pursuit can not possibly be necessary for our protection. We will not use the shield thrown round us by law solely for our protection as innocent purchasers as a subterfuge to aid you in enforcing through us an unjust demand.' Such a position would have been unassailable in morals and in law. The bank, however, elected the contrary. The case then comes to this: The indorser in good conscience should pay; the bank has its funds in its hands sufficient to satisfy the demand with a perfect right in equity to offset same in satisfaction of the bill; the pursuit of the acceptor in a foreign jurisdiction is clearly not necessary to the bank's protection, but can only serve to allow the endorser to avail himself of the protection given by law to an innocent purchaser in order to cut the acceptor off from a just defense and compel it to pay a sum of money which in equity it should not pay."

While the evidence shows that the defendant was induced to purchase the jewelry on account of fraudulent representations made with reference to its quality by said Association, and that the same proved worthless and there was a total failure of consideration for said acceptances, yet it also appears to our satisfaction that the appellant was an innocent holder for value, without notice, of the same; and while, subsequent to its purchase of said paper and before maturity thereof, it had notice of said infirmity therein and defendant's refusal to pay the same, still it also appears that at the time of the maturity of the last acceptance there were no funds in its hands belonging to said association, but, on the contrary, there was an overdraft by said association amounting to some eight hundred dollars. We are of the opinion, for these reasons, that it would be inequitable, so far, at least, as the last acceptance is concerned, to apply the equitable doctrine invoked here, and thereby defeat the right of recovery on the part of appellant thereon. It appears, it is true, as to the other two acceptances sued on, that there were funds in the hands of the bank after their maturity belonging to said association, more than sufficient to have liquidated them, and as to them the defense urged, we think, is applicable; but we do not believe that the bank, appellant in this case,

would have any right to apply funds in his hands belonging to said association to the payment of said last acceptance before the maturity thereof. Certainly if the bank itself, as between it and its depositor, the American Jobbing Association, in this case would have no right to set off its unmatured demand against said depositor, then it would be inequitable to hold that it should be compelled in this case to have applied any funds in its hands that may have been shown to belong to said association in payment of its unmatured claim, in an effort to protect the innocent acceptor, because it could not be held, it seems to us, that it should be required to place itself at disadvantage for the benefit of the acceptor. The equitable doctrine invoked, in our judgment, should only be applied when it could work no injury to the *bona fide* purchaser of the paper, and in support of this doctrine we cite the following authorities: Homer v. National Bank of Commerce, 140 Mo., 225; Jordan v. National Shoe & Leather Bank, 74 N. Y., 467; 1 Morse on Banking, 3d ed., p. 563, sec. 329; Randolph on Commercial Paper, vol. 3, sec. 1441; Commercial Nat'l Bank v. Proctor, 98 Ill., 558; First Nat'l Bank v. Peltz, 176 Pa. St., 513.

Appellant likewise urges that since a guaranty bond was given by the jewelry association to the defendant, indemnifying him against loss under the contract, and further that since the payment of the first two acceptances without objection by him, he should be held to have waived the right of urging his equitable defense thereto. We think it only necessary to say in reply to this contention that the defendant had the right, on the ground of the fraud pleaded, to rescind and cancel the contract, and that when the first two acceptances were paid by him he was not fully aware of the worthlessness of said jewelry, or if so, there was at that time an effort being made by him to adjust the dispute with the association, for which reasons, in our judgment, he was not precluded from urging said defense, and appellant's contention is, therefore, without merit.

Believing that the court erred in rendering judgment against appellant so far as the last acceptance is concerned, its judgment in this respect is now here reversed and rendered in favor of appellant for the sum of seventy-four dollars, with six percent interest thereon from date of maturity thereof, the same being the amount due on said last acceptance; but the judgment in appellee's favor as to the other two acceptances will not be disturbed, but is affirmed.

*Affirmed in part and reversed and rendered in part.*