## W. T. WILSON GRAIN CO. v. CENTRAL NAT. BANK.

(Court of Civil Appeals of Texas. Galveston. June 24, 1911. Rehearing Denied Oct. 5, 1911.)

1. DEPOSITIONS (§ 107*)—OBJECTIONS TO EVIDENCE—MANNER OF TAKING.

Where the receiving teller of a bank testifying by deposition stated that he had credited on the bank's books an amount in favor of a customer on a certain date and attached the customer's bank book to his deposition as an exhibit which showed the credit, an objection to the admission in evidence by the opposite party of the condition of the account on a subsequent date was an objection to the form and manner of taking the deposition, and under Sayles' Ann. Civ. St. 1897, art. 2289, it could only be made in writing on notice before trial.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 309–319; Dec. Dig. § 107.*]

2. EVIDENCE (§ 354*) — DOCUMENTARY EVIDENCE — ADMISSIBILITY — BANK DEPOSIT BOOK.

Where defendant bank introduced in evidence the original bank deposit book of its depositor, and showed that it contained a correct statement of the account between the bank and its depositor, plaintiff was entitled to in-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

troduce the entries in the book in evidence to show that, at the time payment of a draft was refused by defendant bank, which draft had been drawn on a consignment by plaintiff to the depositor and discounted by the bank, the amount of such deposit stood to the credit of the depositor.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. § 354.*]

3. CARRIERS (§ 58*)—BILL OF LADING—TRANSFER WITH DRAFT FOR PRICE—TITLE ACQUIRED.

A transfer by a consignor to a bank of a bill of lading of goods consigned to a purchaser of the consignor and a draft on the purchaser, followed by payment by the bank of the draft to the consignor by crediting the amount thereof to the depositor, placed the legal right to possession of the property in the bank subject to the duty to deliver to the purchaser on his payment of the draft, but the bank could not use the legal title to enable the consignor to defeat the collection by the purchaser of a debt due him from the consignor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

Appeal from District Court, Nacogdoches County: James I. Perkins, Judge.

Action by the W. T. Wilson Grain Company against the Central National Bank. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

June C. Harris, for appellant. Ingraham & Hodges, for appellee.

PLEASANTS, C. J. This is an action brought under the statute for the trial of the right of property. The cause was tried in the court below upon the following agreed statement:

"First. It is agreed that the W. T. Wilson Grain Company is a copartnership, composed of W. T. Wilson and B. T. Wilson, both of whom reside in Nacogdoches county, Tex., and that the Bartlett Commission Company is a copartnership, composed of C. W. Bartlett and E. L. Bartlett, both of whom reside in St. Louis, Mo.

"Second. That before the 12th day of March, 1909, the Wilson Grain Company of Nacogdoches, Tex., ordered from the Bartlett Commission Company one car load of oats to be shipped to W. T. Wilson Grain Company at Nacogdoches, Tex., from St. Louis, Mo.

"Third. That on the 12th day of March, 1909, the Bartlett Commission Company filled said order by loading car No. 133798 Missouri, Kansas & Texas Railway Company with oats at the elevator of the Bartlett Commission Company in St. Louis, Mo., and said car of oats was consigned to the order of Bartlett Commission Company and to the place of destination at Nacogdoches, Tex., and by the way of Shreveport, the car initial being 'Som,' and the said Missouri, Kansas & Texas Railway Company issued and delivered to the Bartlett Commission Company its bill of lading therefor, dated the 12th

day of March, and stamped the 13th day of March, 1909, with instructions as above stated as to where and to whose order the car of oats were to be shipped. Said bill of lading also contained an instruction to notify the W. T. Wilson Grain Company.

"Fourth. That on the 13th day of March, 1909, the said Bartlett Commission Company drew their draft in favor of the Central National Bank for the sum of $907.74 on the W. T. Wilson Grain Company for said car of oats which were No. 2 clip white oats and shipped in car No. 133798 of the Missouri, Kansas & Texas Railway Company, and attached said draft to the bill of lading above described.

"Fifth. That the Central National Bank is a banking corporation created under the laws of the United States and doing business in St. Louis, Mo.

"Sixth. That said Central National Bank in due course of mail forwarded said check with the bill of lading attached to its correspondent at Nacogdoches, Tex., for immediate collection of and from the W. T. Grain Company.

"Seventh. That said car of oats No. 133798 arrived safely at Nacogdoches, Tex., and so did the draft of the Bartlett Commission Company in favor of the Central National Bank on the W. T. Wilson Grain Company with the bill of lading attached thereto. That on the 20th day of March, 1909, the W. T. Wilson Grain Company filed its suit in the district court of Nacogdoches, Tex., against the Bartlett Commission Company for a claimed indebtedness of $1,033.93, and on the same day in said cause filed an affidavit for an attachment, and also proper bond, and on said day of March 20, 1909, procured to be issued in said cause a writ of attachment and placed the same in the hands of the sheriff of Nacogdoches county, and said sheriff at 10:15 o'clock of March 20, 1909, levied said writ upon the said car of oats, being No. 133798, and took possession of them under and by virtue of said writ, and on March 22d, the said W. T. Wilson Grain Company and the said sheriff joined in an application to sell said car of oats and got an order to sell them on the 27th day of March, 1909, but the same was not sold.

"Eighth. And on March 27, 1909, the said Central National Bank, acting by its attorneys, Ingraham, Middlebrook & Hodges, filed an affidavit claiming said car of oats as its property, and it claimed said car of oats in good faith at the same time presented said affidavit to the sheriff of Nacogdoches county (who then had corporal possession of said car of oats) together with its claimants bond in the sum of $1,900 signed by said Central National Bank as principal, and the Commercial National Bank of Nacogdoches, Geo. C. Ingraham, and Frank Sharp,

Jr., as sureties, in the sum of $1,900; the sheriff having valued said oats at $907.74.

"Ninth. And on the said 27th day of March the said sheriff received said affidavit and bond and delivered the said car of oats to the Central National Bank and returned the affidavit and bond to the Central National Bank together with the writ of attachment that issued in the case of the W. T. Wilson Grain Company against the Bartlett Commission Company; the said sheriff approving the bond aforesaid.

"Tenth. That a judgment has been rendered in case of W. T. Wilson Grain Company v. Bartlett Commission Company by default with a writ of inquiry which has been perfected, and foreclosing the attachment lien upon the car of oats subject to judgment rendered in this cause."

It was further agreed that these facts might be supplemented by the facts disclosed in the depositions of the witnesses Zimmerman, Miller, and Foreman, which had been taken and filed in the cause by the appellee. Zimmerman testified, in substance, that he was a clerk in the employment of the Bartlett Commission Company and in that capacity he deposited the draft in question with the appellee bank on March 13, 1909. His statement of the transaction is as follows: "On March 13th I went to the Central National Bank to make my daily deposit. In that deposit there was a draft in the sum of $907.74, payable to the order of the Central National Bank, drawn by the Bartlett Commission Company on W. T. Wilson, at Nacogdoches, Tex. To that draft was attached an original bill of lading which has been attached to the deposition of Hamilton M. Foreman and has been marked 'Defendant's Exhibit A.' Said bill of lading bore the indorsement of the Bartlett Commission Company by P. L. Zimmerman, Secy., as found on the reverse of said Exhibit A, and the bank credited the Bartlett Commission Company as a cash deposit in the amount equivalent to the sum of the draft less the usual discount. The bank book presented and marked 'Defendant's Exhibit D' in connection with the deposition of Hamilton M. Foreman is the original bank book, and the deposit on March 13th is found on page 20 of the deposit book on line 7, being in the sum of $1,558.46, which deposit was made up of four items, as is shown by defendant's Exhibit C, attached to Hamilton M. Foreman's deposition, which is the original deposit slip concerning which I am testifying." He also identified the original bill of lading described in the agreed statement of facts and a copy of the original draft.

Miller testified that he was bill of lading clerk for the appellee bank at the time the draft was discounted by the bank, and that the draft and bill of lading passed through his hands; that the draft was discounted and not taken for collection.

Foreman, after stating that he was receiving teller for the appellee bank, testified as follows: "On March 13, 1909, the Bartlett Commission Company, through their representative, Phillip L. Zimmerman, presented at the receiving teller's window at the Central National Bank in St. Louis, at which window I was stationed, their daily deposit, which original deposit slip I herewith present and attach to my deposition and mark the same 'Defendant's Exhibit C.' One of the items of deposit was a draft in the sum of $907.74, dated at 'St. Louis, Missouri, March 13th, 1909, car 133798, Southern. On demand pay to the order of Central National Bank nine hundred seven and 74/100 dollars—with exchange on New York or St. Louis—#2 Clip White Oats. Value received and charge the same to account of Bartlett Commission Co. E. L. Bartlett. To W. T. Wilson, Nacogdoches, Texas. No. 39.' I have made a careful search for this draft and have been unable to find the same. Said draft has been lost, but I attach hereto a duplicate of said original draft, and the same is in all respects a true and correct copy of the original draft which was presented at the Central National Bank on March 13, 1909, and deposited by the Bartlett Commission Company, and upon which the Bartlett Commission Company received $907.74, under deposit of the date of March 13, 1909; the total deposit of that date being $1,558.46, which was made up of four items, one of which included the draft in question, as shown by the original deposit slip which I have had marked 'Defendant's Exhibit C.' I here attach to my deposition the said copy of draft for $907.74, and same is marked 'Defendant's Exhibit B.' I also here attach to my deposition said original deposit book of the Bartlett Commission Company, and same is marked 'Defendant's Exhibit D.' To this draft in the sum of $907.74 there was attached the original bill of lading of the Missouri, Kansas & Texas Railway Company covering a car load of oats, being Southern car No. 133798, which original bill of lading I herewith attach to my deposition and mark same 'Defendant's Exhibit A.' I received the draft in question together with the said bill of lading attached as so much cash, namely, $907.74, and immediately entered said amount, together with the other items on the daily deposit, to the credit of the Bartlett Commission Company as so much cash. As receiving teller of the Central National Bank I handle nothing but cash items. No items that are placed with the bank for collection go through my hands; my position being that of keeping just and accurate accounts of the deposits entered as cash made by the depositors of the bank."

The cause was tried in the court below without a jury, and judgment was rendered in favor of the bank.

After appellee had introduced in evidence the deposition of the witness Foreman, to

which was attached, as an exhibit, the bank deposit book of the Bartlett Commission Company, showing that appellee had credited said company with the amount of the draft drawn on appellant on March 13, 1909, the date on which said draft was discounted by the appellee, appellant offered in evidence an entry in said bank book showing that on April 1, 1909, the amount credited to the Bartlett Commission Company on March 13th was still on deposit with the appellee bank. Appellee objected to this evidence on the ground that the witness was only asked in regard to the transaction of March 13, 1909, and the entry in said book showing the condition of the account between the commission company and the bank on April 1st, or on any date subsequent to March 13th, was not responsive to any question asked the witness, and therefore not admissible. The court sustained this objection and refused to admit in evidence any entry in the book except the entry of the credit on March 13, 1909, showing the credit to the commission company of the amount of said draft less the discount charged. Under an appropriate assignment of error the appellant complains of this ruling of the trial court.

[1] We think the assignment should be sustained. The objection made to the evidence was an objection to the form and manner of taking the deposition and could only be made in writing, and notice thereof was required to be given to the opposing counsel before the trial was commenced. Article 2289, Sayles' Civil Statute 1897; Lee v. Stowe, 57 Tex. 444; Harris v. Nations, 79 Tex. 412, 15 S. W. 262; Brown v. Mitchell, 75 Tex. 15, 12 S. W. 606.

[2] But we do not think the objection should have been sustained if it had been made at the time and in the manner prescribed by the statute. The book containing the entry offered by appellant was shown to be the original bank deposit book kept by the appellee and the Bartlett Commission Company, and that it contained a correct statement of the account between said bank and its said depositor. We think it immaterial how this book was brought into court and became accessible to the plaintiff. It was there, and its identity, and the correctness of its entries, being established, plaintiff was entitled to introduce such entries in evidence. The interrogatory in answer to which the witness referred to this book and attached same as an exhibit to his deposition only asked for the deposit slip given by the witness, who was the receiving teller of the bank and discounted the draft in question. In addition to the deposit slip asked for, the witness attached this book containing the original entry of the deposit to the credit of the Bartlett Commission Company. This witness testified "that said book is a true and correct statement of their account (Bartlett Commission Company) with the Central National Bank." The witness Mil-

ler also identified the book as the original bank book in which the deposit account between the bank and the commission company was kept. Appellee having thus identified this book and shown that it was correctly kept, and having introduced the entry in said book showing the credit to the commission company of the deposit of March 13, 1909, appellant was entitled to introduce in evidence subsequent entries in said book which showed that at the time the payment of the draft was refused by appellee and for some time thereafter the appellee bank had in its hands on deposit to the credit of the commission company a sum largely in excess of the amount of said draft.

[3] The evidence was most material because, if the facts were as shown by said bank book, appellee was not entitled to recover the property involved in this proceeding. The transfer of the bill of lading to the bank put the legal title to the car load of oats in the bank. But the bank's ownership of the oats was conditional and not absolute. It was bound to deliver the oats to the drawee upon its payment of the draft. It could hold and control the oats until the draft was paid, and if it was not paid could dispose of the oats if necessary to repay itself the money advanced or paid by it for the draft; but it did not in fact buy the oats, and its ownership was limited to the extent above indicated. Blaidsell Co. v. National Bank, 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944.

Such being the character and extent of appellee's ownership of the property, it will not be permitted to use the legal title held by it for its protection, for the purpose of enabling its depositor, the Bartlett Commission Company, to defeat the collection by appellant of a debt due it by said company.

If, as prima facie shown by the entries in the bank deposit book, the commission company had on deposit in appellee bank at the time the payment of the draft was refused and the car of oats levied upon under the writ of attachment sued out by appellant, of all of which appellee had full notice, an amount sufficient to satisfy said draft, appellee not only had the right, but it was its duty, to charge the commission company with the amount of the draft discounted by it, and thus repay itself out of the funds of the commission company in its possession, and not seek, in the interest of its depositor, the commission company, to defeat appellant in the collection of its debt by asserting ownership of the car of oats. That such was appellee's duty in the premises, and that upon the facts stated it cannot now hold the property in question against appellant's claim, is, we think, settled by the opinion of our Supreme Court in the case of Van Winkle Gin & Machinery Co. v. Citizens' Bank of Buffalo, 89 Tex. 147, 33 S. W. 862.

The transfer of the bill of lading to appellee and its payment to the commission

company of the amount of said draft by giving said company credit therefor placed the legal title and right to the possession of the oats in appellee, and in order to defeat this right the burden was upon appellant to show that appellee, after it was notified of appellant's claim, had funds of the commission company in its hands out of which it could and should have repaid itself the amount paid by it in the purchase of the draft. The evidence ruled out by the court would have prima facie established this fact, but without that evidence appellee was entitled to recover on the prima facie case made by it.

It follows from what has been said that, because of the error of the trial court in excluding the entries in the bank book offered in evidence by the appellant, the judgment should be reversed, and the cause remanded, and it has been so ordered.

Reversed and remanded.