**PROVIDENT NAT. BANK OF WACO et al. v. CAIRO FLOUR CO.** (No. 6258.)

(Court of Civil Appeals of Texas. Austin. Nov. 22, 1920. Rehearing Denied Jan. 5, 1921.)

1. Garnishment ⟐218 — Burden of proof on plaintiff to prove draft drawn by a judgment debtor did not belong to intervening bank.

In garnishment by a judgment creditor against a bank which collected a draft drawn by judgment debtor, burden of proof rested upon the plaintiff to show that the money was not property of another bank named as payee in the draft and was the property of the judgment debtor.

2. Garnishment ⟐218—Evidence held to show that money in bank belonged to intervener, and not judgment debtor.

In garnishment proceeding by a judgment creditor, evidence *held* to show that money in a bank paid on draft was not the property of the judgment debtor, but was the property of another bank which was payee in a draft drawn upon the plaintiff by the judgment debtor.

3. Banks and banking ⟐165—Owner of draft owner of proceeds after collection by bank.

Absolute owner of a draft was the owner of the money after the draft was collected by a bank.

4. Banks and banking ⟐119 — Bank not required to withhold funds owing to another because a third person has unsatisfied judgment against him.

There is no rule of law that requires a bank or any one else to withhold funds owing to another person upon the ground that they have knowledge of the fact that some one else has an unsatisfied judgment against such other person.

5. Garnishment ⟐223—No judgment against intervener against whom no writ of garnishment has been sued out.

In a garnishment proceeding by a judgment creditor against a bank to impound money collected under a draft, wherein another bank intervened and proved ownership of the draft, plaintiff was not entitled to a judgment against the intervening bank, although it was indebted to the judgment debtor; no writ of garnishment having been sued out against the intervening bank.

6. Banks and banking ⟐127 — Collection of draft by agent bank completed contract of principal bank to credit account.

Where judgment debtor gave bank a draft for collection, but his account was credited

with the amount of the draft, and it was sent to another bank for collection, the latter was agent for the first bank, and immediately upon collection of the draft by the agent bank the transaction became a closed affair, and the first bank became the absolute owner of the proceeds of the draft, and judgment creditor could not deprive the first bank of its property by garnishment proceedings against the agent bank.

**7. Garnishment ⬤=191—Bank should have been allowed reasonable attorney's fees for filing answer.**

A bank should have been allowed a reasonable attorney's fees for filing an answer as garnishee under Rev. St. art. 307, where it had no property of judgment debtor in its hands.

Appeal from McLennan County Court; Jas. P. Alexander, Judge.

Action by the Cairo Flour Company against the Provident National Bank of Waco and others, in which the First National Bank of Rupert intervened. Judgment for plaintiff, and the named defendant and the intervener appeal. Reversed and rendered.

Sleeper, Boynton & Kendall and R. O. Stotter, all of Waco, for appellants.

Jake Tirey and Geo. W. Barcus, both of Waco, for appellee.

KEY, C. J. The Cairo Flour Company, a partnership, instituted this proceeding against the Provident National Bank of Waco, by a writ of garnishment which required the defendant to answer upon oath what, if anything, it was indebted to one S. J. Hawkins, against whom the plaintiff, Cairo Flour Company, had a judgment. The writ of garnishment also required the bank to answer as to other matters which are not involved in this appeal. The bank answered under oath, negativing the existence of all facts which would show that the plaintiff was entitled to any judgment against it as garnishee. The bank's answer included the following additional averments:

"And, answering further herein, the said Provident National Bank of Waco alleges the facts to be:

"That on or about the 11th day of January, A. D. 1918, it received a certain draft for collection, which draft was transmitted to it from the First National Bank of Rupert, Idaho. That said draft was in words and figures as follows:

" '$272.91.　Rupert, Idaho, January 7, 1918.

" 'At sight pay to order of The First National Bank two hundred and seventy-two and $91/100$ dollars, with exchange, value received, and charge same to account of

" '[Signed]　　　S. J. Hawkins.
" 'Lemon.
" 'To Cairo Flour Co.,
" 'G. P. 185. Waco, Texas.'

"That attached to said draft was a bill of lading. That it presented said draft to the Cairo Flour Company, who on February 8, 1918, paid

same, to wit, the sum of $272.91, which sum your garnishee now has in its possession. That the First National Bank of Rupert, Idaho, is claiming said funds and is claiming that it was the owner and purchaser of said draft when same was transmitted to your garnishee for collection, and that it is entitled to said funds now held by your garnishee. Garnishee says that it has had to employ an attorney to prepare this answer and represent it herein at the reasonable sum of $50.

"Wherefore, premises considered, and having answered herein fully, garnishee prays to be discharged from any liability under said garnishment, that it recover its costs herein incurred, together with attorney's fees, and such other and further relief general and special as it may show itself entitled to."

The First National Bank of Rupert, Idaho, filed a plea of intervention, in which, among other things, it was alleged: .

"That it is now the owner and the person entitled to the fund of $272.91 held by the Provident National Bank of Waco and set forth in its answer filed herein. That on January 7, 1918, said the First National Bank of Rupert, Idaho, purchased from the defendant S. J. Hawkins a certain claim and account against the Cairo Flour Company, plaintiff, for the sum of $272.91. That said account was for certain grain shipped by the defendant S. J. Hawkins to the said Cairo Flour Company, said shipment being evidenced by a bill of lading which the said S. J. Hawkins delivered to this intervener on the purchase of said claim. That your intervener on the purchase of said claim of the said Hawkins against the said Cairo Flour Company attached said draft in question drawn by S. J. Hawkins to the bill of lading aforesaid and sent same to the Provident National Bank of Waco for collection. That the said S. J. Hawkins does not now, and was not when this writ of garnishment was served upon the Provident National Bank of Waco, or at any time since, the owner of said draft or entitled in any wise to the funds derived from its collection. That the funds here in question are the funds of your intervener, the First National Bank of Rupert, Idaho.

"Wherefore, premises considered, intervener prays that on a hearing hereof that said plaintiff, doing business as Cairo Flour Company, take nothing as against said Provident National Bank of Waco, and that the court decree that the funds herein is the property of this intervener, and for general and special relief."

The plaintiff, the Cairo Flour Company, filed a supplemental petition, in reply to the plea of intervention by the First National Bank of Rupert, and to the answer of the garnishee, Provident National Bank, in which supplemental petition it was alleged, among other things, as follows:

"Plaintiff further shows to the court that the First National Bank of Rupert, Idaho, had and at all times has had funds on hand in its bank sufficient to pay the amount of said draft to said bank, and that under the law it has a right

---

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to charge said sum against said draft, and that it is an effort and scheme on the part of said S. J. Hawkins and the First National Bank of Rupert, Idaho, to defeat plaintiff and prevent them from collecting a debt justly due them by the said S. J. Hawkins, and that they are entitled to have the funds in the bank, or that have been in the bank of the First National Bank of Rupert, Idaho, which belonged to the said S. J. Hawkins, applied to the payment of said draft in so far as same affects said First National Bank of Rupert, Idaho, by reason of the fact that the said S. J. Hawkins was, and at all times has been, liable as the drawer of said draft, and is liable to the First National Bank of Rupert, Idaho, on said draft.

"Wherefore plaintiff prays that said fund be adjudged to be the property of S. J. Hawkins, subject to the payment of a debt of plaintiffs against the said S. J. Hawkins, and they pray for general and special relief and for costs and for whatever relief they may be entitled to, either in law or equity."

No other pleadings were filed by any of the parties. There was a jury trial which resulted in a judgment for the plaintiff against the Provident National Bank for the amount sued for, and against the First National Bank of Rupert upon its asserted claim, and no judgment was rendered for the Provident National Bank for the amount claimed by it as attorney's fee; and both of the banks have appealed. The trial court instructed the jury that the burden of proof rested upon the plaintiff to show that the First National Bank of Rupert took the draft in question for collection, and then submitted one and only one special issue to the jury, which read as follows:

"Special Issue No. 1. Did the First National Bank of Rupert, Idaho, purchase the draft in question from S. J. Hawkins, or did said bank take the draft in question for collection?"

To which special issue the jury made the following answer:

"The First National Bank of Rupert, Idaho, took the draft in question for collection."

Based upon that finding of the jury, the court rendered judgment as before stated.

The first assignment of error complains of the refusal of the trial court to give a requested instruction asked by the intervener, the First National Bank of Rupert, directing the jury to return a verdict against the plaintiff Cairo Flour Company; and we sustain that assignment.

The entire evidence in the case was as follows:

"C. C. Smith a witness for the plaintiff, on direct examination testified that he was a member of the Cairo Flour Company, the plaintiff in this suit; that some time during January, 1918, the Provident National Bank of Waco, garnishee herein, presented to the Cairo Flour Company a draft drawn by S. J. Hawkins, of Rupert, Idaho, in the sum of $272.91, payable to the First National Bank of Rupert, Idaho, the intervener, drawn on said Cairo Flour Company; that attached to said draft was a bill of lading for a car of hay; that the Cairo Flour Company had previously purchased a car of hay from the defendant, S. J. Hawkins, and the draft in question was to cover the purchase price of said hay; that, when the draft in question was presented by said bank, it was by the Cairo Flour Company paid, and the bill of lading was surrendered by the bank; that immediately after the payment of said draft the Cairo Flour Company ran a writ of garnishment on said bank, requiring it to answer what, if anything, it was indebted unto the said S. J. Hawkins; that Cairo Flour Company had previously filed suit against the said Hawkins and obtained a judgment against him in the sum of $427.67. Said judgment was for shortages and overcharges on other shipments. However, a portion of said judgment may have been for demurrage on the car of hay in question. The car of hay covered by the draft was shipped from Rupert, Idaho, and came to Waco, consigned to the order of S. J. Hawkins, and the carrier was unable for a while to locate the consignee, but it was learned later that Cairo Flour Company was to have been notified of the arrival of the car.

"C. C. Smith, on cross-examination by garnishee and intervener, testified that he knew nothing about what transpired between defendant Hawkins and intervener First National Bank of Rupert, Idaho, in reference to the draft in question and the car of hay in question; that he knew nothing of what was said and done between said parties; that whether said bank paid Hawkins anything for the draft, or did or did not give his bank account credit for the amount of said draft, he did not know; that he was not in Rupert, Idaho, at this time, but was in Waco, Tex.; that all he knew about the whole transaction was what occurred in Waco, Tex.; that the draft in question was paid by plaintiff when presented; and that thereafter his concern took possession of the car of hay under the bill of lading in question.

"Plaintiff then offered in evidence the draft in question, which is as follows:

"'$272.91.　　　Rupert, Idaho, Jan. 7, 1918.

"'At sight pay to the order of the First National Bank of Rupert two hundred and seventy-two and $91/100$ dollars, with exchange, value received, and charge same to the account of

"'[Signed]　　　　　　S. J. Hawkins.

"'Lemon.

"'To Cairo Flour Company, Waco, Texas.'

"Also writ of garnishment showing service on Provident National Bank of Waco.

"Also minute book of this court showing that on April 4, 1918, said Cairo Flour Company secured a judgment against said Hawkins, by default, on service of notice on nonresident.

"Plaintiff then offered in evidence portions of the deposition of B. B. Titus, whose deposition was taken at the instance of the intervener. The testimony offered was that said witness was cashier of the First National Bank of Rupert, Idaho, the intervener in this cause; that he had been such cashier for 3½ years; that he had known S. J. Hawkins for that length of time; that he handled the draft in question for the intervener bank; that on Jan-

uary 7, 1918, S. J. Hawkins brought the draft in question to the First National Bank of Rupert, Idaho, and presented same to him as cashier of said bank; that he did not remember what was said at the time; that he took the draft and gave Hawkins' account in the bank credit for the amount of the draft; that Hawkins had been doing business with said bank for 3½ years, and that since January 1, 1917, Hawkins had had on deposit in said bank various sums ranging from $824.65 up to $30,000; that on March 26, 1919,. the day the deposition was taken, Hawkins had on deposit $67.79; that the First National Bank of Rupert handled a large number of drafts for S. J. Hawkins during 1917 and 1918, some of which were drawn on the Cairo Flour Company; that a few of the drafts drawn by Hawkins on different people had been reduced; that all drafts drawn by Hawkins were not handled the same way; on the draft in question credit was given Hawkins' bank account and his bank book; most of Hawkins' drafts were taken for collection only, and of the drafts so taken credit was sometimes given him on his bank book; otherwise he was given no credit until the drafts were paid; that Hawkins did quite a large business, and during the shipping season often shipped several hundred cars of produce a month. On shipments of a perishable nature the drafts were taken by the bank for collection only, and on shipments of a staple nature drafts were quite often purchased. Drafts purchased from Hawkins have always been paid. If a draft taken for collection only was returned unpaid, it was charged against his account, and it was returned to him if credit had not been given. He testified that he could not state the details or the exact words of the conversation between himself and Hawkins when Hawkins presented the draft in question to the bank, but that on this occasion Hawkins had requested that his account be given credit for the amount of the draft, and that witness then examined the bill of lading and gave Hawkins credit for the amount of the draft on the books of the bank; that the method of the bank in handling drafts such as this for collection was usually not to give credit for the draft until the same was paid, and in this case the customer would have no control over the funds or credit for the funds until the draft had been paid to the bank. This method differs from a case in which the bank purchases a draft outright in that when the bank purchases a draft the bank immediately gives the customer credit for the amount of the purchase price. On a check or draft taken for collection the amount, if not paid, is charged against the account of the depositor, if he has sufficient funds to carry it. If S. J. Hawkins deposits a check indorsed by him, credit is given. If a draft is deposited for collection, credit is sometimes given if the goods described in the bill of lading attached to draft are not of a perishable nature.

"When a customer of the bank deposits a draft or a check in the bank for collection and the bank has given the customer credit for the same, and the same is returned unpaid, the bank would require the customer to make the check or draft good. The bank does not lose all the money on checks or drafts that it takes for collection, when same are returned unpaid.

"During the months of January, February, March, April, and May, 1918, two debits or charges were made against the account of S. J. Hawkins. One for $367.35 covered a draft drawn by Hawkins on Bayle & Co. and deposited by Hawkins for collection and later by him recalled. The other charge was for $5, and covered a check drawn by one Dennis on another bank and by this bank turned down on account of insufficient funds. Both drafts and check were charged against Hawkins' account, and both were delivered to him.

"On the 21st day of April, 1919, Hawkins had on deposit in the First National Bank of Rupert the sum of $154.71.

"C. C. Smith, a witness for the plaintiff, on redirect examination by the plaintiff, testified that he had been manager of the Cairo Flour Company for a long time; that he had had considerable experience in handling drafts through banks; that he was acquainted with the general custom of banks in handling drafts. 'Q. What is the general custom of banks with reference to crediting the drawer's account with the amount of a draft presented? A. If the drawer is financially responsible, the bank will take the draft and give his account credit for the amount of the draft, and if the draft is returned to the bank unpaid, the bank will then charge the draft back against his account. If the drawer is not financially responsible, the bank will not give his account credit until the draft is paid.'

"Miss Torrence, a witness for the plaintiff, testified that at the time the draft in question was presented to the Cairo Flour Company she was bookkeeper and stenographer for that concern; that she was familiar with the custom of banks in handling drafts, having at one time been assistant cashier of a bank in Lott, Tex. 'Q. What is the general custom of banks in handling drafts as to giving credit for a draft presented? A. Banks take drafts and give the drawer credit for same on their books if he is financially responsible; otherwise they take the drafts for collection only. When a draft is taken for collection only they mark on the drawer's deposit slip, "Taken for collection only." '

"B. B. Titus, a witness whose deposition was taken at the instance of intervener, and a portion of whose deposition was introduced by plaintiff in its behalf, testified further that all drafts taken by intervener bank from S. J. Hawkins for collection had been paid, either by Hawkins or the drawee, and that the draft in question was one of two drafts purchased by intervener bank from Hawkins which remained unpaid; that said bank had no arrangements with the said Hawkins for the payment of this draft in question in case it did not recover this fund; that the original deposit slip covering this draft is in the words and figures as follows:

" 'Deposited with First National Bank for account of S. J. Hawkins.

" 'Rupert, Idaho, Jan. 7, 1918.

" '(Please list each check separately.)

| | |
|---|---|
| Currency ................................. | |
| Gold ....................:.................. | |
| Silver ...................................... | |
| " 'Checks. | |
| SDGP 1085 ................................. | $272 91 |
| Rich & Lind................................. | 559 95 |
| " 'Total ...............:.................... | $832 86' |

"The item 'SDGP 1085 $272.91' represented the draft in question. When the bank took the draft in question, they had no notice that Cairo Flour Company had any claim or demand on S. J. Hawkins. 'Q. If you know, who was the holder or owner of the draft in question on or about the 7th day of January, 1918, and if you answer that it was the First National Bank of Rupert, then state when said bank became the owner of said draft? A. The First National Bank of Rupert, Idaho, purchased the draft on the 7th of January, 1918, and became then the owner thereof and ever since owned the draft or the proceeds thereof. Q. If you have answered that the First National Bank of Rupert, Idaho, was the owner of said draft on the date in question, state what was paid for said draft. A. Face value of the draft amounting to $272.91.'

"Jonah Smith, a witness for intervener, testified that he was assistant cashier of the Provident National Bank, the garnishee; that the draft in question was transmitted by mail from the First National Bank of Rupert, Idaho, to the Provident National Bank of Waco, Tex., for presentation and collection; that the Provident National Bank of Waco had never received any communication whatever from defendant S. J. Hawkins; that the Provident National Bank of Waco presented the draft in question to the Cairo Flour Company on its receipt and same was by the Cairo Flour Company paid on demand; that immediately after the payment of said draft the writ of garnishment was run; that the Provident National Bank then made out a cashier's check for the amount of the draft, payable to First National Bank of Rupert, Idaho, and handled the proceeds of the draft as cash; that the Provident National Bank of Waco still holds the cashier's check in question. He further testified that he was familiar with the general custom of bank in handling drafts for customers; that when a draft was taken for collection only no credit was given the customer's bank account until the draft was paid; that when a draft was purchased from a customer that credit was immediately given the customer's account.

"It is agreed by all parties hereto that $25 is a reasonable attorney's fee for preparing garnishee's answer herein."

**[1, 2]** As held by the trial court, the burden of proof rested upon the plaintiff to show that the money which they had paid to the Provident National Bank on the draft drawn upon them by S. J. Hawkins was not the money of the First National Bank of Rupert, Idaho, the payee named in the draft, but belonged to and was the property of S. J. Hawkins, against whom the plaintiff held an unsatisfied judgment; and the plaintiff not only failed to make such proof, but the undisputed testimony shows that the money referred to belonged to and was the property of the intervener, the First National Bank of Rupert, and therefore was not subject to garnishment in the hands of the Provident National Bank who had collected the same as agent for the First National Bank of Rupert. Blaisdell v. Citizens' Nat. Bnk. (Sup.) 75 S. W. 295, 62

L. R. A. 968; Chrisman v. Lumberman's Nat. Bnk., 163 S. W. 651; Howe Grain & Mercantile Co. v. Crouch Grain Co., 211 S. W. 946; Kadane & Co. v. Security Nat. Bank, 219 S. W. 506; 7 Corpus Juris, 635. The last authority reads as follows:

"Where checks or drafts are indorsed and are accepted as cash they become the property of the bank, and the bank becomes the debtor of the depositor in the amount of such check, even though it is understood that the bank has the right to charge back the amount if the paper deposited proves uncollectable. So where a bank accepts for deposit a check drawn on itself and credits the payee with the amount, this creates the relation of debtor and creditor between the bank and the payee and is equivalent to a payment of the amount of the check to the drawer; and it is held that, under such circumstances, the bank has no right to charge back the amount credited to the payee, even though the drawer fails to pay the amount."

A long list of authorities is cited in support of that text, and it is also supported by the Texas cases cited above.

In reply to the assignment of error under consideration, counsel for appellee contend that the verdict of the jury is supported by testimony, and therefore conclusive of the rights of the parties, and in support of that contention they cite Van Winkle Co. v. Bank, 89 Tex. 147, 33 S. W. 862; Wilson Grain Co. v. Central Nat. Bank, 139 S. W. 996. These cases are not in point. In the Van Winkle Case it was held that a bank to which a bill is indorsed by the drawer for value without notice and before maturity, and which, instead of looking to the indorser, on protest thereof for nonpayment, sues the acceptor in another state, cannot recover of him, it having received notice before trial that there was a failure of consideration for the acceptance, and it having had at the time of such notice deposited with it by the indorser a sufficient amount which it could have applied to the payment of the indorser's liability.

**[3, 4]** In the case at bar no one is attempting to hold the drawee of the draft liable because the draft has been paid, but the drawee is seeking to impound the money, it had paid to the agent of the payee named in the draft, and claims that in equity it is entitled to that money: First, upon the theory that its debtor, Hawkins, was the real owner of the money, and that the two banks were merely acting as his agents in collecting the same; and, second, that if the First National Bank of Rupert had in fact bought the draft and thereby became the owner thereof, when it ascertained that Hawkins was indebted to the plaintiff, it should have reimbursed itself out of funds it then had in its possession belonging to Hawkins, and refunded to the plaintiff the money which it had paid upon the draft. If the First National Bank of Rupert became the absolute owner of the

draft, it was the owner of the money after the draft was collected, and there is no rule of law that requires a bank or any one else to withhold funds owing by them to another person, upon the ground that they have knowledge of the fact that some one else has an unsatisfied judgment against such other person.

The Wilson Grain Company Case, the other authority relied on by appellee, is also dissimilar from the case at bar. That case involved the question of title to certain property shipped to a designated consignee, and did not involve the question of title to the money which the consignee may have paid upon the draft which accompanied the bill of lading for the property. It was there held that, while the transfer of the bill of lading to the bank put the legal title to the shipment of oats in the latter, such title was not absolute, but conditional, and that it was bound to deliver the oats to the drawee upon the payment of the draft, and that, such being the extent of the bank's ownership of the property shipped, it would not be permitted to use the legal title held by it for its protection for the purpose of enabling its depositor to defeat the collection of a debt due by such depositor. The title to money which had been paid on a draft was not involved in that case.

The Kadane Case cited above, recently decided by the Dallas Court of Civil Appeals, is quite similar to the case at bar, and that decision supports the conclusion reached by us in this case. Also, as tending to support the same conclusion, we refer to the following cases; First Nat. Bank v. Nigro & Co., 110 S. W. 536; First Nat. Bank of Chicago v. Mineral Wells & L. P. St. Ry., 63 Tex. Civ. App. 638, 133 S. W. 1099; Hawkins v. Alfalfa Produce Co., 152 Ky. 152, 153 S. W. 204, 44 L. R. A. (N. S.) 600; Wichita Falls Compress Co. v. Moody Co., 154 S. W. 1032; Landon v. Foster Drug Co., 186 S. W. 434; West Tex. Nat. Bank v. Wichita Mill & Elev., 194 S. W. 835.

[5, 6] It should be borne in mind that no writ of garnishment has been sued out against the First National Bank of Rupert, and therefore the plaintiff is not entitled to a judgment against it, although it may be indebted to S. J. Hawkins. Furthermore, if it be true, as contended by counsel for appellee, that the testimony justifies the finding of the jury that the First National Bank of Rupert took the draft from Hawkins upon the plaintiff for collection, nevertheless, as the bank agreed to and did place the amount of the draft to his credit, and as the First National Bank of Rupert has collected the draft, the transaction has been closed and the contract executed; and by force of that executed contract the bank is the absolute owner of the money. In other words, the conclusion most favorable to appellant that can be placed upon the testimony is that the bank received the draft from Hawkins under an agreement upon its part to place the same to his credit, and the very fact that Hawkins was the drawer of the draft constituted an implied promise upon his part to pay the same, if it could not be collected from the drawee, who was the plaintiff in this suit. The bank placed the amount of the draft to Hawkins' credit, and thereby executed its part of the contract; the plaintiff paid the draft to the agent of the First National Bank of Rupert, thereby rendering it certain that the Rupert bank could assert no claim against Hawkins; and those facts render the contract between the Rupert bank and Hawkins an executed contract. Payment of the money to the Waco bank, the garnishee in this suit, was the same in law as though it had been paid to the Rupert bank, and therefore, as between that bank and Hawkins, the transaction became a closed affair; and, such being the case, the title of the Rupert bank to the fund in question is just as absolute as it would have been if the plaintiff, instead of paying the money to its agent, had paid it directly to the Rupert bank. Such being the case, and here being no proof that the Rupert bank acquired the draft for the purpose of defrauding the plaintiff, the latter cannot deprive the Rupert bank of title to its property by garnishment proceedings against its agent who holds the same as such agent, and not in its own right.

In dealing with this phase of the case, we have not overlooked the fact that B. B. Titus, the cashier of the First National Bank of Rupert, stated that the draft in question was one of two drafts purchased by the bank from Hawkins, which remained unpaid; but it is manifest that he did not mean by that statement to contradict the testimony submitted by both the plaintiff and the defendant Provident National Bank to the effect that the latter bank had collected the draft from the plaintiff; and the witness must have meant that the money which had been collected on the draft by the agent of the Rupert bank had not been received by the latter bank—a result which was brought about by the service of the writ of garnishment upon the Waco bank.

[7] Error is also assigned upon the failure of the trial court to allow the Provident National Bank a reasonable attorney's fee for filing its answer as garnishee, and we sustain that assignment. R. S. art. 307. It was agreed that $25 was reasonable attorney's fee for the services referred to, and the same should have been awarded to the garnishee.

For the reasons stated, the judgment of the court below is reversed, and here rendered to the effect that the plaintiff take nothing by its garnishment suit, and that the garnishee, the Provident National Bank of Waco,

recover from the plaintiff the sum of $25 as attorney's fee, and that all other costs in this court and in the court below be taxed against the appellee in this court, who was plaintiff in the trial court.

Reversed and rendered.